## COX *v.* HART.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 71. Argued November 16, 1922.—Decided December 11, 1922.

1. What will constitute possession of a tract of land depends largely upon its character and condition and the use to which it is

adapted; enclosure, or physical occupancy of every part, is not necessary. P. 433.

2. Plowing of a furrow around 320 acres of unoccupied desert land; posting of a notice of claim, leveling, clearing, seeding, irrigating and fencing of parts, with some ditch construction, and marking of a boundary with stakes, *held* a taking of possession of the entire tract and commencement of the work of reclaiming it, within the intent of the Act of March 28, 1908, c. 112, § 1, 35 Stat. 52, amending the Desert Land Law, as against an adverse claimant who occupied part of the tract subsequently, with notice. P. 433.

3. The office of a proviso is to except something from the operative effect, or to qualify or restrain the generality, of the substantive enactment to which it is attached. P. 435.

4. The Act of March 28, 1908, *supra*, restricted the right to enter desert land to surveyed land, but contains a proviso that any qualified individual " who has, prior to survey, taken possession of a tract of unsurveyed desert land," and " has reclaimed or has in good faith commenced the work of reclaiming the same," shall have the preference right to make entry within 90 days after the filing of the approved plat of survey in the district land office. *Held*, that the proviso includes a case in which possession and work began before the date of the act no less than cases in which they were subsequent. P. 434.

5. Public lands lose their status as " surveyed lands " and become " unsurveyed " when the lines and marks of the original survey have become obliterated for practical purposes and when, for that reason, a resurvey has been directed by an act of Congress. P. 436.

270 Fed. 51, affirmed.

APPEAL from a decree of the Circuit Court of Appeals affirming a decree of the District Court which adjudged the appellee to be the equitable owner of a tract of land patented to the appellant under the Desert Land Laws, and directed a conveyance of the legal title.

*Mr. Charles R. Pierce,* with whom *Mr. John M. Sutton* was on the briefs, for appellant.

*Mr. Eugene W. Britt,* with whom *Mr. George H. P. Shaw* and *Mr. William J. Hunsaker* were on the brief, for appellee.

Mr. Justice Sutherland delivered the opinion of the Court.

This case involves conflicting claims to a tract of 160 acres of land in Imperial County (formerly San Diego County), State of California. The facts, so far as necessary to be stated, are as follows:

About the years 1854–1856 the body of public lands, which includes the tract in controversy, was surveyed under the authority of the United States. No settlements upon these lands of any consequence were made until the year 1900. In the interval the marks of the survey had so far disappeared as to render it practically impossible to locate the lines which the survey had established. None of the section or township corners originally placed upon or in the vicinity of the land here involved was in place, and it was impossible to determine by reference to that survey in what section it was located.

On July 1, 1902, Congress provided for a resurvey of this body of public lands, by an act (32 Stat. 728) as follows:

"That the Secretary of the Interior be, and he is hereby, authorized to cause to be made a resurvey of the lands in San Diego County, in the State of California, embraced in and consisting of the tier of townships thirteen, fourteen, fifteen, and sixteen south, of ranges eleven, twelve, thirteen, fourteen, fifteen, and sixteen east, and the fractional township seventeen south, of ranges fifteen and sixteen east, all of San Bernardino base and meridian; and all rules and regulations of the Interior Department requiring petitions from all settlers of said townships asking for resurvey and agreement to abide by the result of the same so far as these lands are concerned are hereby abrogated: *Provided,* That nothing herein contained shall be so construed as to impair the present bona fide claim of any actual occupant of any of said lands to the lands so occupied."

The resurvey thus authorized was made and the approved plats filed in 1909.

On March 28, 1908, Congress passed an act to limit and restrict the right of entry and assignment under the desert land law and to authorize an extension of the time within which to make final proof (35 Stat. 52). Section 1 of that act is as follows:

" That from and after the passage of this Act the right to make entry of desert lands under the provisions of the Act approved March third, eighteen hundred and seventy-seven, entitled 'An Act to provide for the sale of desert lands in certain States and Territories,' as amended by the Act approved March third, eighteen hundred and ninety-one, entitled 'An Act to repeal timber-culture laws, and for other purposes,' shall be restricted to surveyed public lands of the character contemplated by said Acts, and no such entries of unsurveyed lands shall be allowed or made of record: *Provided, however,* That any individual qualified to make entry of desert lands under said Acts who has, prior to survey, taken possession of a tract of unsurveyed desert land not exceeding in area three hundred and twenty acres in compact form, and has reclaimed or has in good faith commenced the work of reclaiming the same, shall have the preference right to make entry of such tract under said Acts, in conformity with the public land surveys, within ninety days after the filing of the approved plat of survey in the district land office."

The appellee (plaintiff below), during the year 1906, being then of age and qualified, began the work of reclaiming a tract of three hundred and twenty acres, including the lands here in controversy. Previously, and shortly before she was of age, her father, acting in her behalf, had caused a furrow to be plowed around the entire three hundred and twenty acre tract, and had posted a notice claiming it for the appellee. During the year 1906 appellee caused about eighty acres of that portion of

the tract lying east of the lands in controversy to be lev-
elled, cleared and seeded to barley, and ditches for irri-
gating the same to be constructed. All the lands at that
time were unoccupied desert lands, within the meaning of
the land laws of the United States. The barley was irri-
gated several times during the year. After the crop had
matured and during the year 1906 the appellee fenced the
land upon which it had been grown, and also during the
year seeded to barley about 5 acres of the 160 acres in
controversy. This crop however did not mature. Early
in November, 1906, the appellee constructed a head ditch
along the east line of the specific tract in controversy and
did some work in preparation for the irrigation of the
south half thereof, and also put up stakes upon the south
half to mark the lines. She also caused borders to be
made along the east line in preparation for the construc-
tion of a head ditch. This was the state of things on No-
vember 8, 1906, when the appellant put up a tent house
upon the land, established a residence and claimed the
one hundred and sixty acre tract. Appellant saw the
plowed furrows along the east and south sides of the land
and was notified by appellee's father that that one hun-
dred and sixty acre tract was included within appellee's
three hundred and twenty acre claim. Appellant re-
mained on the tract until he was ejected, in March, 1909,
as the result of a judgment obtained by appellee against
him in a state court. *Hart* v. *Cox,* 171 Cal. 364. Appel-
lant during his occupancy constructed a ditch one-half
mile in length and did some other work on the land.

Appellant, in July, 1907, filed an application for the
land in the local land office, but his application was re-
jected for the reason that the description was defective.
Later in the same month appellee filed an application for
the entire three hundred and twenty acre tract, but her
application was rejected.

In March, 1909, after the resurvey had been completed,
appellant filed a new application and shortly thereafter

and within ninety days after the filing of the survey plat, appellee also filed a new application, both applications describing the lands with reference to the resurvey. Decision was rendered in the local land office in favor of appellant. The Commissioner of the General Land Office reversed this decision but the Secretary of the Interior reversed the Commissioner and affirmed the local land office in favor of appellant. Subsequently, on October 24, 1918, a patent was issued to the appellant for the land in controversy.

Appellee thereupon brought suit against the appellant in the United States District Court for the Southern District of California, and prayed a decree declaring that appellant held the land in trust and requiring appellant to convey the legal title to her. That court rendered a decree in favor of appellee and the case was carried by appeal to the Circuit Court of Appeals for the Ninth Circuit, where, after hearing, the decree of the District Court was affirmed. 270 Fed. 51. The case is here upon appeal from the Circuit Court of Appeals.

The rights of the parties turn upon the meaning and effect of the proviso to § 1 of the Act of March 28, 1908, heretofore quoted. That proviso is, in substance, that where a qualified entryman has *prior to survey taken possession* of a tract not exceeding three hundred and twenty acres of *unsurveyed* desert land and has reclaimed or in good faith *commenced the work of reclaiming* the same he shall have the preference right to make entry of such tract within ninety days after the filing of the plat of survey in the local land office. Two questions are, therefore, presented for solution:

(1) Did appellee take possession of the lands and reclaim or in good faith commence the work of reclaiming the same prior to the attempted appropriation by appellant?

(2) Were the lands at the time *unsurveyed* desert lands, to which upon the facts the statutory preference

right to make entry attached? Appellant denies that the lands were unsurveyed and contends, moreover, that, in any event, appellee is not within the terms of the proviso since whatever she did was prior to the passage of the act which is not to be given retrospective operation.

1. Prior to appellant's occupation on November 8, 1906, appellee had entered upon and exercised and was then exercising the acts of dominion herein set forth over the 320 acre tract under a claim of right. When appellant entered upon the land all these evidences of appellee's claim and possession were open and visible and in addition appellant was specifically notified that the claim included the land in controversy.

What will constitute possession of land largely depends upon its character, condition and the use to which it is adapted. Here appellee went upon the land for the purpose of reclaiming it from its desert character. The whole of it obviously could not be reclaimed at once. The building of ditches, the securing of a water supply, the plowing and preparation of the land and the planting of crops were all steps requiring time. Residence upon the land was not required as a prerequisite to securing title under the desert land laws. Having in view all the conditions we are of opinion that the facts sufficiently establish appellee's actual possession of the entire tract at the time appellant sought to make his appropriation. *Ellicott* v. *Pearl,* 10 Pet. 412, 442; *Ewing* v. *Burnet,* 11 Pet. 41, 53; *Hart* v. *Cox,* 171 Cal. 364; *Booth & Graham* v. *Small & Small,* 25 Iowa, 177, 181; *Illinois Steel Co.* v. *Bilot,* 109 Wis. 418, 443, 446. It is not necessary to constitute actual possession that there should be an enclosure or any physical or visible occupancy of every part of the land. As well said by the Supreme Court of Iowa in *Booth & Graham* v. *Small & Small, supra:*

" Possession of land is the holding of and exclusive exercise of dominion over it. It is evident that this is not,

45646°—23——28

and cannot be, uniform in every case, and that there may be degrees in the exclusiveness even of the exercise of ownership. The owner cannot occupy literally the whole tract,—he cannot have an actual *pedis possessio* of all, nor hold it in the grasp of his hands. His possession must be indicated by other acts. The usual one is that of inclosure. But this cannot always be done, yet he may hold the possession in fact of uninclosed land, by the exer- .cise of such acts of ownership over it as are necessary to enjoy the ordinary use of which it is capable, and acquire the profits it yields in its present condition,—such acts, being continued and uninterrupted, will amount to actual possession, and, if under color of title, or claim of right, will be adverse." That appellee, in addition to taking possession of the entire 320 acres before appellant's occupancy, had in good faith commenced the work of reclaiming the same does not admit of doubt. Indeed she had actually reclaimed more than one-fourth of the entire area, which included five acres of the tract in controversy.

2. It remains to determine whether the lands at the time appellee took possession of them were *unsurveyed* lands and whether appellee was entitled to the preference right granted by the proviso heretofore quoted.

We first dispose of the contention that, even if the lands were unsurveyed, it cannot be held that appellee was within the terms of the proviso because that would be to give the proviso a retroactive effect and there is nothing to show that Congress so intended. The rule is, of course, well settled that unless the contrary plainly appear a statute operates prospectively only. Does the application of the proviso here proposed contravene this rule?

Prior to the Act of March 28, 1908, 35 Stat. 52, unsurveyed lands, as well as surveyed lands, came within the purview of the Desert Land Laws (19 Stat. 377). That act, however, from and after its passage restricted " the right to make entry of desert lands . . . to *surveyed*

public lands " and expressly declared that " no such entries of *unsurveyed* lands shall be allowed or made of record." Then follows the proviso now being considered. The office of a proviso is well understood. It is to except something from the operative effect, or to qualify or restrain the generality, of the substantive enactment to which it is attached. *Minis* v. *United States,* 15 Pet. 423, 525. Although it is sometimes misused to introduce independent pieces of legislation. *Georgia Railroad & Banking Co.* v. *Smith,* 128 U. S. 174, 181; *White* v. *United States,* 191 U. S. 545, 551. Here, however, the proviso is plainly employed in its primary character. The effect of the substantive enactment was to forbid the entry of unsurveyed lands. But the law theretofore had been otherwise and one purpose of the proviso evidently was to exclude from the operative effect of the new rule cases which might have arisen under the prior law,—that is cases of persons who had taken possession of and undertaken to reclaim unsurveyed lands at a time when the law conferred the right to do so. Any such person, no less than one who acted subsequently, is within the words of the proviso. He is literally " a person who has, prior to survey, taken possession," etc. The proviso so construed impairs no vested right and brings into existence no new obligation which affects any private interest. No reason is perceived why the words employed should not be given their natural application and so applied the case of appellee is included. Indeed, this does not give the proviso a retroactive operation. The language in terms applies to one who at the time of the enactment occupied a particular *status,* viz: the status of a person who *has done* the things enumerated. A statute is not made retroactive merely because it draws upon antecedent facts for its operation. *Regina* v. *Inhabitants of St. Mary, Whitechapel,* 12 Q. B. Rep. 120, 127; *United States* v. *Trans-Missouri Freight Association,* 166 U. S. 290, 342.

Passing this point, however, it is contended that the lands in question were in fact surveyed. It is true the lands had been surveyed in 1854–1856, but the lines of that survey by the year 1900 had disappeared to such a degree that for practical purposes they had become non-existent. A survey of public lands does not *ascertain* boundaries; it *creates* them. *Robinson* v. *Forrest*, 29 Cal. 317, 325; *Sawyer* v. *Gray*, 205 Fed. 160, 163. Hence the running of lines in the field and the laying out and platting of townships, sections and legal subdivisions are not alone sufficient to constitute a survey. Until all conditions as to filing in the proper land office and all requirements as to approval have been complied with, the lands are to be regarded as unsurveyed and not subject to disposal as surveyed lands. *United States* v. *Morrison*, 240 U. S. 192, 210; *United States* v. *Curtner*, 38 Fed. 1, 10. It follows that although the survey may have been physically made, if it be disapproved by the duly authorized administrative officers the lands which are the subject of the survey are still to be classified as unsurveyed. In other words, to justify the application of the term " surveyed " to a body of public land something is required beyond the completion of the field work and the consequent laying out of the boundaries, and that something is the filing of the plat and the approval of the work of the surveyor. If, pending such approval, or, still more, if after disapproval of the survey, the lands in contemplation of law are unsurveyed, it is difficult to see why the same result may not follow when the survey originally approved and platted is subsequently annulled or abandoned because the lines and marks established have become obliterated. A purpose to annul or abandon such survey we think may be disclosed by an act of Congress directing a resurvey plainly based upon the fact of such obliteration.

Turning now to the record in the case under consideration it appears that the lines and marks of the original

survey of 1854–1856 had for all practical purposes ceased
to be. This is apparent not only from a consideration of
the record but is in accord with repeated declarations of
the land department. See *In re Peterson,* 40 L. D. 562,
566, 570, where it is said not only that all the corners
which had been established north of the fourth standard
parallel were missing, but that the survey itself was
"grossly inaccurate," that in making the resurvey an at-
tempt to retrace the old original survey had failed " and it
is now a physical impossibility to identify on the ground
sections 16 and 36, according to the original surveys. . . .
All vestiges of that survey have been wiped away." See
also *Stephenson* v. *Pashgian,* 42 L. D. 113, 114. In the
land office contest between the parties hereto for the land
in controversy the Secretary of the Interior, although
ruling in favor of appellant, stated that the description of
the land by reference to the lines of the old survey " was
an impossible condition." *Hart* v. *Cox,* 42 L. D. 592, 594.
Both courts below reached the same conclusion.

The District Court said: " The evidence of the survey
of 1856 upon the ground in that vast area, covered by said
act had become useless, by reason of the fact that the lines
of the survey were obliterated, and all that was left were
some prominent monuments. This act [the resurvey act]
recognized that the survey of 1856 was of no practical use
and that the lands were, for all practical purposes, unsur-
veyed lands. It was impracticable to dispose of these
lands by congressional subdivision according to the survey
of 1856."

The Circuit Court of Appeals, after referring to the
original survey and the fact that no settlement was made
until nearly fifty years later, said:

" It was then found that the marks of the survey had
so far been obliterated that it was practically impossible
to locate the lines thereof." *Cox* v. *Hart,* 270 Fed. 51.

From the foregoing it results and we hold that the
Resurvey Act of 1902 was in effect and intent a legislative

declaration that the lands therein described were, when the act was passed and for all purposes of settlement and sale, unsurveyed lands. With the disappearance of the physical evidences the old survey survived only as an historical event. As a tangible, present fact it ceased to exist and a new survey became necessary to reëstablish the status of the area over which it had extended as surveyed lands of the United States.

The decree below is

*Affirmed.*