No. 33,545

THE SOWERS PLAN CROP INSURANCE MUTUAL COMPANY, *Plaintiff*,
v. CHARLES F. HOBBS, Commissioner of Insurance, *Defendant*.

(68 P. 2d 1110)

Opinion filed June 12, 1937.

*M. F. Cosgrove, C. A. Magaw* and *Frank P. Eresch,* all of Topeka, and *Earl B. Swarner,* of Kansas City, for the plaintiff.

*Clarence V. Beck,* attorney general, and *C. Glenn Morris,* assistant attorney general, for the defendant.

The opinion of the court was delivered by

ALLEN, J.: This is an original proceeding in mandamus brought by the plaintiff to compel the defendant, the commissioner of insurance, to issue a certificate authorizing the plaintiff to engage in business as a mutual insurance company, other than life, in the state of Kansas. An alternative writ was issued and an order was made directing defendant to issue the certificate as prayed for, or appear and show cause why the same should not be issued. The defendant has filed an answer and a motion to quash the alternative writ.

The plaintiff seeks to do business as a mutual insurance company, other than life, as authorized by article 12 of the insurance code. It seeks to write the kind of insurance authorized by paragraph (*j*) of G. S. 1935, 40-1203, which reads as follows:

"Against loss or damage by any hazard upon any risk not provided in this section, which is not prohibited by statute or at common law from being the subject of insurance, excepting life insurance."

The precise question to be determined is whether the statute requires the plaintiff to have a surplus of $50,000 before the insurance commissioner shall issue to the plaintiff a certificate of authority to transact business in the state. This requires a construction of G. S. 1935, 40-1204, which reads as follows:

"The commissioner of insurance shall issue a certificate of authority to such company, when it has fully complied with the following conditions:

"(*a*) It shall hold bona fide applications for insurance upon which it shall issue simultaneously, or it shall have in force, at least twenty policies to at least twenty members for the same kind of insurance upon not less than two hundred separate risks, each within the maximum single risk described herein.

"(*b*) The 'maximum single risk' shall not exceed twenty percent of the admitted assets, or three times the average risk, or one percent of the insurance in force, whichever is the greater, any reinsurance taking effect simultaneously with the policy being deducted in determining such maximum single risk.

"(*c*) It shall have collected a premium upon each application. The total of such premiums shall be held in cash or securities in which insurance companies are authorized to invest, and the total assets shall be equal to five times the maximum single risk retained; but in no case less than ten thousand dollars, which shall be deposited with the state treasurer and shall not be withdrawn until such company shall have a surplus of twenty-five thousand dollars in excess of all liabilities: *Provided,* That in the case of a com-

pany organized under the provisions of this article or admitted to this state for the purpose of doing business under paragraph (j) of section 40-1203, it shall have a surplus of at least fifty thousand dollars. In the case of workmen's compensation, employer's liability or fidelity and surety insurance, such assets shall not be less than one hundred thousand dollars; or in lieu of complying with this subsection and of subsection (a) of this section, it shall hold a surplus equal to the capital stock and surplus required of a stock company effecting the same kinds of insurance.

"(d) For the purpose of transacting employer's liability and workmen's compensation insurance, the application shall cover not less than one thousand five hundred employees, each such employee being considered a separate risk for determining the maximum single risk."

Plaintiff asserts that it has complied with all the provisions of the statute and is entitled to a certificate. The insurance commissioner contends that the proviso in paragraph (c) of G. S. 1935, 40-1204, requires the plaintiff to have a surplus of $50,000 before the certificate may be issued, and as this has not been done the writ should be quashed.

The case must turn on the meaning and effect of the proviso in clause (c) of the section above quoted. The proper use of provisos in drafting legislative acts is by way of taking special cases out of general acts, and *providing for them*. A proviso differs from an exception. An exception exempts absolutely from a general legislative provision; a proviso defeats its operation conditionally.

In *Cox v. Hart,* 260 U. S. 427, 43 S. Ct. 154, 67 L. Ed. 332, it was said:

"The office of a proviso is well understood. It is to except something from the operative effect, or to qualify or restrain the generality of the substantive enactment to which it is attached. (*Minis v. United States,* 15 Pet. 423, 525.) Although it is sometimes misused to introduce independent pieces of legislation. (*Georgia Railroad & Banking Co. v. Smith,* 128 U. S. 174, 181; *White v. United States,* 191 U. S. 545, 551.)" (p. 435.)

Defendant argues that the proviso in clause (c) introduces an independent legislative act and relies on *Georgia Railroad & Banking Co. v. Smith,* which was criticized in *Hart v. Cox,* supra. He insists that the word "provided" be translated to mean "Be it further enacted." In this view, of course, plaintiff would be compelled to show a surplus of $50,000 as a condition precedent to a right to the certificate to write the class of insurance applied for in plaintiff's petition.

The language in paragraph (c) preceding the proviso is general in its terms. The applicant (1) shall have collected a premium on

each application; (2) such premiums must be held in cash or securities in which the company is authorized to invest; (3) the total assets shall be equal to five times the maximum single risk retained; (4) the total assets required is $10,000, and such assets must be deposited with the state treasurer, and (5) this deposit cannot be withdrawn until the applicant shall have a surplus of at least $25,-000 in excess of all liabilities.

Stopping here, the language is general and sweeping, authorizing all companies, including these doing business in paragraph (j) of G. S. 1935, 40-1203, to withdraw the assets deposited with the state treasurer when their surplus amounts to $25,000.

But it is clear the legislature intended that in case the company was organized under paragraph (j) of G. S. 1935, 40-1203, the deposit made with the state treasurer could not be withdrawn until such company should accumulate a surplus of $50,000. If the first part of the proviso be amended to read as follows:

*"Provided,* That in the case of a company organized under the provisions of this article or admitted to this state for the purpose of doing business under paragraph (j) of section 40-1203, it shall have a surplus of at least fifty thousand dollars, *before such deposit shall be withdrawn."*

the added phrase in italics would clarify, but not change, the meaning of the proviso.

We think the proviso was intended to modify and restrain the general language in the first part of paragraph (c), and that the applicant was not required to have a surplus of fifty thousand dollars as a condition precedent to its right to a certificate. It being admitted that the applicant has complied with all other requirements of the statute, it is entitled to the certificate prayed for in its application. The motion to quash the alternative writ is overruled and the writ is allowed.