**SAVORGNAN v. UNITED STATES.**

No. 9550.

United States Court of Appeals
Seventh Circuit.

Dec. 14, 1948.

Rehearing Denied Jan. 8, 1949.

Charles H. Cashin, U. S. Atty., and James E. Doyle, and Carlisle P. Runge, Asst. U. S. Attys., all of Madison, Wis.,

and T. Vincent Quinn, Asst. Atty. Gen., for appellants.

Carl A. Flom, of Madison, Wis., for appellee.

Before SPARKS and KERNER, Circuit Judges, and SWYGERT, District Judge.

SWYGERT, District Judge.

This is an appeal from a judgment in a declaratory action to determine the plaintiff's present nationality. The question presented is whether, by her acts and conduct and under the applicable statutes, the plaintiff has been expatriated. The District Court held that, since the plaintiff had [73 F.Supp. 109, 110] "merely acquired a technical Italian citizenship", she had never lost or relinquished her American citizenship and that she is now and has been since birth a citizen of the United States. The respondents assert that this is an erroneous determination of the plaintiff's nationality status.

The plaintiff was born in Wisconsin in 1915 and continued to reside in this country until 1941. In the early part of 1940 she became acquainted with her future husband, Alessandro Savorgnan, who was stationed in St. Louis as a member of the Italian Foreign Service. Several months after meeting Savorgnan, the plaintiff applied through the Italian consulate for citizenship in that country. She did this in order to obtain the consent of the Italian government to her intended marriage to Savorgnan. In August, 1940, the Italian government issued a Royal Decree which granted her an Italian citizenship. Following that, in November, she signed a document bearing an oath of allegiance to Italy and a formal renunciation of her American citizenship. This was done at the Italian consulate in Chicago. The plaintiff and Savorgnan were married on December 26, 1940.

After the diplomatic representatives of the Italian government had been ordered in July, 1941, to leave this country, the plaintiff accompanied her husband to Italy. She sailed July 15, 1941, using an Italian diplomatic passport.

The plaintiff continued to live in Italy throughout the war period. After the American troops entered Rome in June of 1944, she identified herself to the American military authorities and later was employed by the Allied Control Commission. When the American consulate in Rome was reopened in October, 1944, the plaintiff applied for registration as an American citizen. In January, 1945, she was notified by that office that the Department of State had approved her registration. Subsequently, she applied at the American consulate in Rome for a passport. She was told that the passport could not be issued because her registration as an American citizen was being reconsidered by the State Department. On June 1, 1945, the plaintiff was advised that since the State Department was of the opinion that she had become expatriated, a passport would not be issued. Previous to this advice, the plaintiff had learned of the serious illness of her mother. Because of that and after receiving the State Department's decision as to the issuance of a passport, she returned to the United States on November 1, 1945, through use of an Italian diplomatic passport. On February 12, 1946, the plaintiff requested the United States Commissioner of Immigration and Naturalization to correct the records of his office to show that she was an American citizen at the time of her return to this country in 1945. The request was denied, and this action for a declaratory judgment followed.

The District Court made special findings embracing the above facts. The findings also included the following: "The application and oath (for Italian citizenship) were written in Italian. Plaintiff at that time could not read, write or understand that language. She assumed that the signing of the documents was but a step in obtaining consent of the Italian Government to her marriage. * * * At the time she signed the documents she had no intention whatsoever of renouncing her allegiance to this country or establishing a permanent residence in any other country. * * * That plaintiff relied upon her husband's statement and assurance that by signing the documents * * * she merely acquired a technical Italian citizenship, which status would in no way endanger her American citizenship. * * * At the time she af-

fixed her signature thereto she had no present or fixed intention in her mind of renouncing her allegiance to this country and in fact never did intend to divest herself of American citizenship. * * * That the plaintiff did not knowingly renounce or relinquish her American citizenship."

It is contended on behalf of the respondents that the plaintiff lost her American citizenship under Sections 401(a) and 403 (a) of the Nationality Act of 1940, Title 8, United States Code Annotated §§ 801(a), 803(a), by having obtained naturalization as an Italian citizen in 1940 and having taken up a residence in Italy in 1941. In the alternative, it is contended that if these provisions of the Nationality Act of 1940 do not apply, the plaintiff lost her American citizenship under Section 2 of the Act of March 2, 1907, Title 8, United States Code, (1934 Ed.) § 17, 34 Stat. 1228, either by being naturalized in 1940 in the foreign state of Italy in conformity with its laws or by taking an oath of allegiance to that state on November 23, 1940. It is the plaintiff's view that the Act of March 2, 1907, is the applicable statute, but she says that she did not knowingly or intentionally lose her American nationality or expatriate herself under that statute or under the foregoing sections of the Nationality Act of 1940.

Before deciding whether the plaintiff has become expatriated, it is necessary to determine first which of the two statutes govern the facts in this case. This determination is necessary because the effective date of the Nationality Act of 1940 was January 13, 1941, and pertinent facts occurred both before and after that date. The plaintiff left the United States and went with her husband to Italy in July of 1941. All of the plaintiff's other acts and conduct relating to a change of nationality occurred prior to January 13, 1941.

It would appear from a reading of the 1907 Act [1] that an American citizen could expatriate himself by either becoming naturalized in or taking an oath of allegiance to a foreign state, regardless of his removal from this country. Nothing in the statute indicates that its effectiveness depended upon whether these acts constituting expatriation occurred outside the United States or, if performed within the country, upon a subsequent change of residence to a foreign state. But the question is presented: Must the statute be read unconditionally or should it be interpreted in the context of certain legal principles which prevailed at the time of its enactment and had governed expatriation in the cases decided prior to that time? The most important of these cases are Talbot v. Jansen, 1795, 3 Dall. 133, 3 U.S. 133, 1 L.Ed. 540; The Santissima Trinidad, 1822, 7 Wheat. 283, 20 U.S. 283, 5 L.Ed. 454; and Comitis v. Parkerson, C.C. La. 1893, 56 F. 556, 22 L.R.A. 148. All held that removal from the country, combined with a change in allegiance, was essential in accomplishing expatriation. This doctrine not only expressed the prevailing notions of the day as to what constituted expatriation, but also was a perpetuation of the historical concept of that term.

From the enactment of the 1907 Act until the adoption of the Nationality Act of 1940, the Department of State consistently maintained in its rulings and consular advices that if an American citizen became naturalized in or took an oath of allegiance to a foreign state while within this country, he was not expatriated unless and until he took up residence abroad. 3 Hackworth, Digest of International Law, 228–231. No court ever passed directly on this point. However, a dictum in Ex Parte Griffin, D.C. N.Y. 1916, 237 F. 445 was to the effect that the forsaking of one's own country was a usual concomitant of expatriation.

On the other hand, the Supreme Court in the case of Mackenzie v. Hare, 1915, 239 U.S. 299, 36 S.Ct. 106, 60 L.Ed. 297, Ann.Cas.1916E, 645, held that an American woman who married an alien while in the United States lost her citizenship under the provisions of Section 3 of the Act of March 2, 1907, even though she continued to live in this country. We take a similar view of Section 2 of the 1907

---

[1] The Act of March 2, 1907, provides in part:

"Sec. 2. That any American citizen shall be deemed to have expatriated himself when he has been naturalized in any foreign state in conformity with its laws, or when he has taken an oath of allegiance to any foreign state."

Act, and hold that a subsequent removal from the country was not necessary to effect the expatriation of a United States citizen who became naturalized in or took an oath of allegiance to a foreign state while residing within the United States. To hold otherwise would impose an unauthorized condition upon the plain and unambiguous provisions of the statute.

Having arrived at this determination, it would seem unnecessary to analyze the Nationality Act of 1940 as it pertains to the facts before us. But assuming, arguendo, that the previous administrative interpretation of Section 2 of the 1907 Act were valid, we believe that the provisions of the 1940 Act, as properly construed, cause the facts here to be covered by either one or the other of these statutes.

First, it would appear that the saving clauses of Section 347 of the 1940 Act, Title 8 United States Code Annotated, § 747, have a direct bearing upon the instant situation. This section provides that nothing in either Chapters III or V of the Act, unless otherwise provided therein, shall be construed to effect "any act, * * * done or existing, at the time this Act shall take effect; but as to all such * * * acts, * * * the statutes * * * repealed by this Act, are hereby continued in force and effect."

█ Section 2 of the Act of March 2, 1907, was specifically repealed by Section 504, Chapter V, of the 1940 statute. It would appear that becoming naturalized in a foreign state in conformity with its laws is an "act" within the meaning of the above-quoted provisions of Section 347, and that, therefore, the provisions of Section 2 of the 1907 statute would continue to govern·the legal consequences of a naturalization in a foreign state which occurred before the effective date of the Nationality Act of 1940, although a change to a foreign residence did not take place until after that date.

Second, Section 401 of the Nationality Act of 1940 provides in part: "A person who is a national of the United States, whether by birth or naturalization, shall lose his nationality by: (a) Obtaining naturalization in a foreign state, * * *."

And Section 403(a) of the Act provides, in part: "Except as provided in subsections (g) and (h) of section 401, no national can expatriate himself, or be expatriated, under this section while within the United States * * *."

█ These provisions do not say that one must have been naturalized in a foreign state after the Nationality Act of 1940 became effective. We think a reasonable construction permits their application to a factual situation in which an American citizen has been naturalized in a foreign state before the 1940 Act became effective, has continued in that status until and after that time, and then subsequently has taken up residence abroad. The status of becoming a naturalized citizen is the same whether its existence began before or after the enactment of the 1940 Act. This rationale is supported by Petition of Peterson, D.C. Wash.1940, 33 F.Supp. 615; Petition of Prack, D.C.Pa.1932, 60 F.2d 171; In re Varat, D.C.N.Y.1932, 1 F.Supp. 898, in which somewhat analogous legal problems were involved. Moreover, it cannot be contended successfully that this renders the statute retroactive, since it is well settled that a statute is not retroactive merely because it depends upon antecedent facts for its operation. Cox v. Hart, 1922, 260 U.S. 427, 43 S.Ct. 154, 67 L.Ed. 332; Reynolds v. United States, 1934, 292 U.S. 443; United States v. Bradley, 7 Cir., 1936, 83 F.2d 483.

██ Coming now to the vital question presented by this appeal and having in mind the interpretation we have given the Act of 1907, we think that the voluntary act of the plaintiff in obtaining Italian citizenship in 1940 effected a loss of her American citizenship. While expatriation ordinarily connotes a voluntary renunciation or abandonment of nationality and allegiance, Perkins v. Elg, 1939, 307 U.S. 325, 59 S.Ct. 884, 83 L.Ed. 1320, Congress has said that one shall be deemed to have expatriated himself when he becomes naturalized in a foreign state. In other words, when an American citizen voluntarily acts in a manner inconsistent with his American citizenship by becoming a naturalized citizen of another country, his expatriation results, regardless of his subjective intent.

Applying this construction of the statute to the instant facts, the conclusion is inescapable that the plaintiff, by voluntarily becoming naturalized under Italian law, lost her American citizenship, regardless of whether she knowingly renounced or relinquished that citizenship. Conceding that her motive was solely to obtain consent of the Italian government to her marriage and that she was misinformed as to the legal consequences of her conduct, the fact remains that she consciously and voluntarily applied for and obtained naturalization in a foreign state which, under the provisions of the statute, effected a loss of her American citizenship.

The motive for her conduct is distinguishable from her intent to act as she did. Such motive has no bearing on the determination of this question. Nor is the fact that she was misinformed or mistaken as to the legal consequences of her conduct of any significance here. One cannot avoid the force of a statute by asserting a mistaken conclusion as to its sanctions or effects. If these factors were permitted consideration, the operation of the statute would depend not upon the voluntarily performed act of becoming naturalized in a foreign state, but upon the extent of the legal knowledge and the subjective intention or motivation of the person involved. Such tests cannot be used to determine the operation of the statute.

Moreover, if (1) removal from the country were a necessary element to effect expatriation under the 1907 Act, or (2) the Nationality Act of 1940 governed the facts of this case, the plaintiff could not find succor in the fact that she did not intend to reside permanently in Italy. It is not disputed that she left this country and went to Italy in order to reside there with her husband. She testified that when she accompanied her husband abroad, her stay there was for an indefinite period of time, although she hoped to return very shortly. We think that these facts show that the plaintiff took up a foreign residence within the requirement of Section 403(a) of the Nationality Act of 1940, as well as any requirement of the 1907 Act.

It further appears that the United States of America is not a proper party defendant to this action, since it has not consented to be sued. For that reason the petition should have been dismissed against this defendant.

The judgment is reversed and the case is remanded with directions to dismiss the petition as against the United States and to enter judgment in conformity with this opinion.