**MONDAKOTA GAS COMPANY, a Corporation, et al., Petitioners,**

v.

**FEDERAL POWER COMMISSION, Respondent,**

**Montana-Dakota Utilities Company, Intervenor.**

**No. 12759.**

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 16, 1956.

Decided March 15, 1956.

---

Mr. Leif Erickson, of the bar of the Supreme Court of Montana, Helena, Mont., pro hac vice, by special leave of Court, with whom Mr. James R. Browning, Washington, D. C., was on the brief, for petitioners. Mr. Ellis Lyons, Washington, D. C., also entered an appearance for petitioners.

Mr. William J. Grove, Asst. Gen. Counsel, Federal Power Commission, with whom Mr. Willard W. Gatchell, Gen. Counsel, Federal Power Commission, and Mr. Joseph B. Hobbs, Atty., Federal Power Commission, were on the brief, for respondent.

Mr. Armin M. Johnson, of the bar of the Supreme Court of Minnesota, Minneapolis, Minn., pro hac vice, by special leave of Court, with whom Messrs. Philip F. Herrick and James A. Murray,

Washington, D. C., were on the brief, for intervenor.

Before EDGERTON, Chief Judge, and PRETTYMAN and DANAHER, Circuit Judges.

PRETTYMAN, Circuit Judge.

This is a petition to review an order of the Federal Power Commission. Petitioners claim to be shippers, purchasers or producers of natural gas. They attack that part of a Commission order which relieved the Montana-Dakota Utilities Company, a pipe-line firm, of any obligation to operate its gas transmission lines as a common carrier under terms of the Mineral Lands Leasing Act of 1920.[1] Montana-Dakota, which we shall call "Pipe Line", was allowed to intervene in opposition to the petition for review. Thereafter Pipe Line and the Commission moved to dismiss the petition, on the ground that petitioners were not parties aggrieved by the Commission's order.[2] Action on this motion was held in abeyance pending hearing and consideration of the case on the merits.

We turn first to the motion to dismiss. The extent to which the several petitioners participated in the proceedings before the Commission varies considerably. The most active was the Mondakota Gas Company. Consequently the status of Mondakota is the clearest, and we shall deal primarily with that petitioner.

Mondakota claims to be a producer and shipper of natural gas. In the proceedings before the Commission Mondakota filed applications in two of the dockets and was named by Pipe Line as defendant in another. It filed various papers and a brief but did not appear at the hearing except to request a postponement and, later, an adjournment. After the hearing Mondakota petitioned for a re-opening of the record and further hearing. The petition was denied on grounds that the issues were legal in nature and that no purpose would be served by additional proof.

Pipe Line and the Commission now urge that Mondakota is not aggrieved, because the record shows it has no present service contracts for use of Pipe Line's transmission facilities. Mondakota had such agreements in the past, they say, but assigned them, so that at the time of hearing they were held by the Industrial Gas Company, which is not a party to the petition for review. However the fact that Mondakota is not presently a formal party to such an agreement does not dispose of its claim that it is aggrieved by the Commission's order. The record throws little light upon Mandakota's interest in the service agreements held by Industrial Gas. But it does disclose that at least as late as July, 1954, Mondakota made payments owing from Industrial to Pipe Line and that Mondakota offered Pipe Line a bond to secure certain later payments. More important, in one of the dockets Pipe Line filed a complaint in which it charged Mondakota, among others, with violation of the Natural Gas Act. Testimony in support of this charge indicates that Mondakota had been active in soliciting retail customers of Pipe Line and, further, that as late as 1950 Mondakota's sole regular business was the shipping of gas over transmission facilities controlled by Pipe Line. It is noteworthy, in light of this testimony, that all parties apparently assumed Mondakota's interest in the proceedings before the Commission; indeed Pipe Line, while professing ignorance of the relationship between Mondakota and Industrial Gas, treated Mondakota at all times as having interests decidedly adverse to its own.

The Commission order of which review is sought terminates the obligation of Pipe Line to render common-carrier service. Pipe Line made clear to the Commission that if it were relieved

---

1. Section 28, 41 Stat. 449, as amended, 30 U.S.C.A. § 185.

2. As required by Sec. 19(b) of the Natural Gas Act, 52 Stat. 831 (1938), 15 U.S.C.A. § 717r(b).

of this obligation it would no longer ship gas in interstate commerce on the account of others. Thus the Commission's order effectively denies this use of the Pipe Line facilities to Mondakota and others who might seek to employ them. Mondakota has used these facilities in the past in its own name; it has made payments for their later use by others; it has solicited users of gas with the obvious intention of using them further. Before now its interest has never been questioned. In view of this record we think it would be excessively technical to hold that Mondakota is not aggrieved by a Commission order that forecloses future use of Pipe Line's system by outsiders, solely because it was not the formal party to service agreements in effect at the time these proceedings were instituted. We conclude that Mondakota has a sufficient interest to obtain review. Thus we think it unnecessary to consider the status of the other petitioners. The motion to dismiss will therefore be denied.

The sole issue presented by the case on the merits is whether an amendment to Section 28 of the Mineral Lands Leasing Act[3] applies to pipe lines which were, at the time of the amendment, already subject to the common-carrier provisions of that section. Before amendment Section 28 read in pertinent part as follows:

"Rights-of-way through the public lands * * * may be granted by the Secretary of the Interior for pipe-line purposes for the transportation of oil or natural gas to any applicant possessing the qualifications provided in section 1 of this Act [30 U.S.C.A. § 181], to the extent of the ground occupied by the said pipe-line and twenty-five feet on each side of the same under such regulations and conditions as to survey, location, application, and use as may be prescribed by the Secretary of the Interior and upon the express condition that such pipe lines shall

be constructed, operated, and maintained as common carriers and shall accept, convey, transport, or purchase without discrimination, oil or natural gas produced from Government lands in the vicinity of the pipe line in such proportionate amounts as the Secretary of the Interior may, after a full hearing with due notice thereof to the interested parties and a proper finding of facts, determine to be reasonable: * * *."

The amendment in question added to the foregoing a proviso as follows:

"That the common carrier provisions of this section shall not apply to any natural gas pipeline operated by any person subject to regulation under the Natural Gas Act or by any public utility subject to regulation by a State or municipal regulatory agency having jurisdiction to regulate the rates and charges for the sale of natural gas to consumers within the State or municipality".

Petitioners' argument is that the amendment must be read as limited by the phrase "Rights-of-way through the public lands * * * may be granted". So read, they argue, the amendment applies only to natural gas pipe lines granted rights-of-way after August 12, 1953, the date on which the amendment was enacted. Thus their contention is that, because Section 28 as originally enacted covered only future grants, the amendment to that section also covers only future grants. To construe the amendment as applying to pipe lines already subject to the common-carrier restrictions is, they say, to give it retroactive effect.

We think the argument cannot be sustained. The 1953 amendment provides that pipe lines otherwise bound by the common-carrier provisions shall be exempt where they are operated by persons subject to specified public regulation. The exemption rests upon operation. According to the terms of the

**3.** 67 Stat. 557 (1953).

amendment, if the operation of the pipe line is subject to the regulation specified in the amendment, the common-carrier provisions do not apply. The amendment makes no reference to conditions in grants of rights-of-way; it refers directly to operation. It speaks in the present, referring to present operation. If Congress had meant its exemption proviso to apply only to carriers thereafter securing rights-of-way, we think it would have cast its enactment in a different mold. It would have referred to conditions in grants. As it is, Congress said that pipe lines otherwise subject to the common-carrier provisions should be exempt where their operation is subject to certain regulation. Of course the common-carrier provisions are not requirements imposed initially, once and for all, like the payment of a fee; they are of continuing application. A pipe line that receives a grant is subject to the common-carrier provisions from the date of the grant. Thus, when it is exempted from those provisions, a current, present requirement is lifted. Such an exemption is plainly what Congress intended.

The amendatory proviso thus interpreted is not retroactive. It applies only to present and future operation and present and future regulation, drawing upon antecedent grants only as a condition for its present effect.[4]

If there were any doubt or ambiguity in the statute, the legislative history of the amendment would be dispositive. The report on the House bill[5] spoke of the incompatibility between the characteristics of a natural gas pipe line and its operation as a common carrier. It indicated a belief that the common-carrier provisions of Section 28 restrict-

ed the capacity of the pipe lines to serve public needs. Thus the object of the amendment was, as later explained by the House managers,[6] to "relieve" certain pipe lines from the common-carrier obligation. We think the language of the amendment clearly expresses this object and that petitioners' construction would substantially defeat the legislative intent.

Affirmed.

---

4. See Reynolds v. United States, 1934, 292 U.S. 443, 449, 54 S.Ct. 800, 78 L. Ed. 1353; Cox v. Hart, 1922, 260 U.S. 427, 435, 43 S.Ct. 154, 67 L.Ed. 332; John McShain, Inc., v. District of Columbia, D.C.Cir., 1953, 92 U.S.App.D.C. 358, 205 F.2d 882, certiorari denied 1953, 346 U.S. 900, 74 S.Ct. 227, 98 L.Ed. 400; Neild v. District of Columbia, D.C.Cir., 1940, 71 App.D.C. 306, 110 F.2d 246.; Benjamin v. Hunter, 10 Cir., 1949, 176 F.

2d 269; Savorgnan v. United States, 7 Cir., 1948, 171 F.2d 155, affirmed 1950, 338 U.S. 491, 70 S.Ct. 292, 94 L.Ed. 287; McDougal v. New York Life Ins. Co., 9 Cir., 1906, 146 F. 674.

5. H.R.Rep. No. 764, 83d Cong., 1st Sess. (1953).

6. H.R.Rep. No. 1032, 83d Cong., 1st Sess. (1953).