March 19, 1993

UNITED STATES COURT OF APPEALS
For The First Circuit

No. 92-2104

EDWARD McANDREWS, AS TRUSTEE OF
IYANOUGH REALTY TRUST,

Plaintiff, Appellant,

v.

FLEET BANK OF MASSACHUSETTS, N.A., ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

Before

Selya, Circuit Judge,

Campbell, Senior Circuit Judge,

and Cyr, Circuit Judge.

Edward R. Wiest, with whom Edward D. Tarlow and Tarlow,

Breed, Hart, Murphy & Rodgers, P.C. were on brief, for appellant.

Leonard G. Learner and Hutchins, Wheeler & Dittmar, P.C. on

brief for appellee Fleet Bank of Massachusetts, N.A.
S. Alyssa Roberts, Attorney, with whom Ann S. DuRoss,

Assistant General Counsel, and Richard J. Osterman, Jr., Senior

Counsel, were on brief, for appellee Federal Deposit Insurance
Corporation.

March 19, 1993

SELYA, Circuit Judge. A property owner appeals from a
SELYA, Circuit Judge.

ruling that keeps intact a bank's lease notwithstanding both the

bank's failure and a clause in the lease ostensibly permitting

the landlord to opt out upon the tenant's insolvency. Because

enforcing the lease despite the termination-upon-insolvency

clause comports with the provisions of the Financial Institutions

Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub. L.

No. 101-73, 103 Stat. 183 (codified as amended in scattered

sections of 12 U.S.C.), and because such enforcement constitutes

neither a retroactive application of the newly enacted statute

nor an unconstitutional taking of appellant's property, we affirm

the judgment below.

I. BACKGROUND

In 1986, plaintiff-appellant Edward McAndrews, in his

capacity as trustee of the Iyanough Realty Trust, purchased real

estate situated at 375 Iyanough Road, Hyannis, Massachusetts (the

Hyannis property). At the time, the premises were under lease to

Merchants Bank & Trust Company of Cape Cod. The lease, executed

in 1969, provided for a 20-year term with a 20-year renewal

option. After appellant acquired the Hyannis property, the Bank

of New England (BNE) merged with Merchants Bank and seasonably

exercised the option.

Subsequently, Congress enacted FIRREA, thus providing a

mechanism to deal with financially distressed banks in a manner

that preserves their going concern value and enhances the

prospects of orderly administration during troubled times.

2

FIRREA includes

a provision allowing the Federal Deposit Insurance Corporation

(FDIC), as receiver, to enforce contracts previously entered into

by failed banks notwithstanding contractual provisions designed

to guard against exactly that eventuality. See 12 U.S.C.

1821(e)(12)(A) (Supp. III 1991).1 This section has particular

pertinence in the present situation since the Hyannis lease

contains a termination-upon-insolvency clause (which we shall

call an ipso facto clause) permitting the lessor to abrogate the

lease if any regulatory authority, such as the FDIC, takes over

the tenant bank.2

FIRREA was effective on the date of its enactment,

viz., August 9, 1989. See Demars v. First Serv. Bank for Sav.,

1The statute provides in relevant part that the FDIC, qua

receiver,

may enforce any contract . . . entered into
by the depository institution notwithstanding
any provision of the contract providing for
termination, default, acceleration, or
exercise of rights upon, or solely by reason
of, insolvency or the appointment of a
conservator or receiver.

12 U.S.C. 1821(e)(12)(A).

2The ipso facto clause is embodied in section 6.1 of the

lease. It states:

If . . . the Lessee is closed or taken over
by the banking authority of the Commonwealth
of Massachusetts or other bank supervisory
authority, . . . the Lessor lawfully may
immediately or at any time thereafter and
without demand or notice, enter upon the
premises or any part thereof in the name of
the whole, and repossess the same . . . and
expel the Lessee . . . .

3

907 F.2d 1237, 1238-39 (1st Cir. 1990). Seventeen months

thereafter, BNE failed. The FDIC was appointed as receiver on

January 6, 1991. It organized a so-called bridge bank, see 12

U.S.C. 1821(n)(1)(A) (Supp. III 1991), named it New Bank of New

England (NBNE), and assigned the leasehold interest in the

Hyannis property to it. See 12 U.S.C. 1821(n)(3)(A) (Supp. III

1991). When appellant, relying on the lease's terms, served NBNE

with a notice to quit, the bank stood fast, asserting that FIRREA

rendered the ipso facto clause unenforceable.

Appellant then sought a declaration of rights in

federal district court, naming NBNE and FDIC as defendants.3 He

argued that section 1821(e)(12)(A) should only be applied to

leases executed after FIRREA's effective date. In appellant's

view, applying the statute to a preexisting lease containing an

ipso facto clause effectively nullifies the clause, therefore

constituting an improper retroactive application of the statute;

and, moreover, effects a taking without compensation in violation

of the Fifth Amendment.

The district court rejected these twin asseverations

and granted summary judgment in defendants' favor. See McAndrews

v. New Bank of New England, 796 F. Supp. 613, 616 (D. Mass.

1992). McAndrews appeals.

II. RETROACTIVE APPLICATION

It is a settled rule that courts should not apply

3In July 1991, Fleet Bank of Massachusetts purchased NBNE's
leasehold interest in the Hyannis property. Fleet has replaced
NBNE as a defendant and appellee.

4

statutes retroactively when doing so would significantly impair

existing substantive rights and, thus, disappoint legitimate

expectations. See, e.g., Bradley v. Richmond Sch. Bd., 416 U.S.

696, 711 (1974); FDIC v. Longley I Realty Trust, F.2d ,

(1st Cir. 1993) [No. 92-1770, slip op. at 5]; C.E.K. Indus.

Mechanical Contractors, Inc. v. NLRB, 921 F.2d 350, 358 n.7 (1st

Cir. 1990); cf. American Trucking Ass'ns v. Smith, 110 S. Ct.

2323, 2338 (1990) (explaining retroactivity principles in respect

to judge-made law). In the instant case, appellant posits that

applying section 1821(e)(12)(A) to trump a preexisting escape

clause must be considered a retroactive application of FIRREA

and, as such, improper. We do not agree.

The determination of whether a statute's application in

a particular situation is prospective or retroactive depends upon

whether the conduct that allegedly triggers the statute's

application occurs before or after the law's effective date.

Hence, a statute's application is usually deemed prospective when

it implicates conduct occurring on or after the effective date.

See Cox v. Hart, 260 U.S. 427, 434-35 (1922); EPA v. New Orleans

Pub. Serv., Inc., 826 F.2d 361, 365 (5th Cir. 1987); see also

Allied Corp. v. Acme Solvents Reclaiming, Inc., 691 F. Supp.

1100, 1110 (N.D. Ill. 1988); King v. Mordowanec, 46 F.R.D. 474,

482 (D.R.I. 1969). Even when the later-occurring circumstance

depends upon the existence of a prior fact, that interdependence,

without more, will not transform an otherwise prospective

application into a retroactive one. See New York Cent. & Hudson

5

River R.R. Co. v. United States (No. 2), 212 U.S. 500, 505-06

(1909) (holding that a statute prohibiting rebates could validly

be applied to a rebate paid after the act's effective date with

respect to property transported before the act's effective date);

Gonsalves v. Flynn, 981 F.2d 45, 48-49 (1st Cir. 1992) (holding

that an amendment to a tolling provision operates prospectively

when it bars a suit filed after its enactment, even if the claim

accrued before the law changed). Phrased another way, a statute

does not operate retroactively simply because its application

requires some reference to antecedent facts. See Cox, 260 U.S.

at 435; see also New Orleans Pub. Serv., 826 F.2d at 365 ("A law

is not made retroactive because it alters the existing

classification of a thing.").

This means, of course, that a statute may modify the

legal effect of a present status or alter a preexisting

relationship without running up against the retroactivity hurdle.

The key lies in how the law interacts with the facts. So long as

a neoteric law determines status solely for the purpose of future

matters, its application is deemed prospective. See New Orleans

Pub. Serv., 826 F.2d at 365.

Employing these first principles, FIRREA's reach in

this case cannot be deemed retroactive. Signing a lease

containing an ipso facto clause does not in itself unleash

section 1821(e)(12)(A). Only subsequent events can pull the

trigger. Here, for example, FIRREA was brought into play through

a collocation of circumstances, all occurring well after the

6

law's effective date: the tenant's insolvency, the FDIC's

appointment as receiver, and the landlord's attempt to utilize

the lease's escape hatch. It follows that, because the conduct

triggering the statute's application occurred long after FIRREA's

enactment, using section 1821(e) to trump the ipso facto clause

constitutes a prospective use of the statute regardless of when

the lease was executed.4 Any other result would twist FIRREA's

structure, do violence to its clear language, and needlessly

frustrate Congress's intent to "deal expeditiously with failed

financial institutions." H.R. Conf. Rep. No. 101-222, 101st

Cong., 1st Sess. (1989), reprinted in 1989 U.S.C.C.A.N. 432.

After all, if courts were to construe FIRREA so as to shield from

its grasp all claims arising from contracts formed before

FIRREA's enactment, Congress's efforts to protect the public from

existing and anticipated bank failures would be hamstrung.

4In attempting to buttress its claim of retroactivity,
appellant relies on United States v. Security Indus. Bank, 459

U.S. 70 (1982), and Hodel v. Irving, 481 U.S. 704 (1987). Both

cases are inapposite. Security Bank stands for the proposition

that an attempted invalidation of liens perfected prior to
passage of the Bankruptcy Reform Act constituted a retroactive
application of the Act. 459 U.S. at 78-79. That situation would
be analogous to, say, an FDIC attempt to undo a landlord's pre-
FIRREA eviction of an insolvent bank tenant. That is not the
case at bar.
Hodel involved a statute forbidding certain

testamentary transfers. As applied, the statute operated to
extinguish devises originating with individuals who died after
the act's effective date. See 481 U.S. at 709. Significantly,

the question of whether, as a matter of statutory construction,
the act must be deemed to operate retroactively when it
implicates wills drawn before the effective date was a non-issue.
Rather, the court examined whether the property regulation as
applied constituted an unconstitutional taking under the Fifth
Amendment. See id. at 713-18.

7

Our conclusion that the district court's use of section

1821(e) did not constitute a retroactive application is fortified

by three other pieces of supporting data. The first is the

opinion in Hawke Assocs. v. City Fed. Sav. Bank, 787 F. Supp. 423

(D.N.J. 1991). To all intents and purposes, Hawke is squarely on

point. There, the court applied section 1821(e)(12)(A) to render

unenforceable a lease termination clause similar to the one at

issue here. See id. at 426-27. While the parties in Hawke

signed the lease nearly two years before FIRREA's enactment, the

tenant entered receivership four months after the statute's

effective date.5 See id. at 424.

Second, we find instructive the caselaw construing

section 365(e)(1) of the Bankruptcy Code, 11 U.S.C. 365(e)(1)

(1988). Courts have consistently held that section 365, an

enactment which renders termination-upon-insolvency clauses

unenforceable in bankruptcy, applies to leases predating the

Code. See, e.g., Matter of Triangle Lab., Inc., 663 F.2d 463,

467 (3d Cir. 1981) (observing that 365(e)(1) controls "leases .

. . executed prior to the effective date of the Code" when "the

event which trigger[s] the bankruptcy termination clause occur[s]

after the effective date of the Code"); In Re Sapolin Paints,

5There are other decisions to like effect. In Longley I

Realty Trust, F.2d at [slip op. at 8], this court applied

a FIRREA provision codified at 12 U.S.C. 1823(e) to nullify an
alleged oral agreement originating before the Act's effective
date. In RTC v. Southern Union Co., No. MO-91-CA-120 (W.D. Tex.

July 7, 1992), the Resolution Trust Corporation successfully
invoked, inter alia, section 1821(e)(12)(A) to enforce a

repurchase agreement that predated FIRREA.

8

Inc., 5 B.R. 412, 414-17 (Bankr. E.D.N.Y. 1980) (nullifying a

termination-upon-bankruptcy clause in a lease that predated the

Code where the lessee's insolvency occurred after the Code's

effective date). We think the analogy between the concinnous use

of Code section 365(e)(1) and FIRREA section 1821(e)(1)(A) is a

powerful one.

Third, we take some modest comfort in the awareness

that a variety of FIRREA provisions, albeit provisions of an

essentially procedural nature, have been held to affect claims

arising out of contracts entered into prior to FIRREA's

enactment. See, e.g., Demars, 907 F.2d at 1239 (applying

FIRREA's grant of federal jurisdiction to cases pending at the

time of enactment); In Re Resolution Trust Corp., 888 F.2d 57, 58

(8th Cir. 1989) (same); Triland Holdings & Co. v. Sunbelt Serv.

Corp., 884 F.2d 205, 207 (5th Cir. 1989) (same); see also United

Bank v. First Republic Bank Waco, 758 F. Supp. 1166, 1168 (W.D.

Tex. 1991) (applying FIRREA's administrative claims process to

cases pending on FIRREA's effective date).

For these reasons, we reject appellant's principal

assignment of error, concluding that, by construing section 1821

to trump the lease's preexisting ipso facto clause, the district

court carried out a proper prospective application of the

statute.

III. THE TAKINGS CLAUSE

We move now to appellant's fallback position. He

asserts that applying FIRREA to thwart a preexisting termination-

9

upon-insolvency clause violates the Fifth Amendment.6 On this

point, appellant argues that his inability to abort the lease and

repossess the property notwithstanding the tenant bank's failure

destroys his right to the use and enjoyment of the leased

premises, thereby effecting an unconstitutional taking without

compensation analogous to those arising from various proscribed

physical invasions. See, e.g., Lucas v. South Carolina Coastal

Council, 112 S. Ct. 2886, 2893 (1992); Loretto v. Teleprompter

Manhattan CATV Corp., 458 U.S. 419, 435-38 (1982). We test this

proposition.

The concept of a "taking" within the meaning of the

Fifth Amendment defies precise definition.7 Indeed, the Supreme

Court has "eschewed the development of any set formula" for

determining which property-right infringements constitute

compensable takings, relying "instead on ad hoc, factual

inquiries into the circumstances of each particular case."

6The Fifth Amendment states in part that:

No person shall . . . be deprived of
life, liberty, or property, without due
process of law; nor shall private property be
taken for public use, without just
compensation.

U.S. Const. amend. V.

7Withal, the court has identified two discrete categories of
regulatory takings that, if left uncompensated, constitute
unconstitutional takings per se. These categories, which need no

"case-specific inquiry into the public interest advanced in
support of the restraint," are (1) permanent physical invasions
and (2) regulations which "den[y] all economically beneficial or
productive use of land." Lucas, 112 S. Ct. at 2893. The

restriction at issue in this case falls into neither category.

10

Connolly v. Pension Benefit Guar. Corp., 475 U.S. 211, 224

(1986). Three factors that rank paramount in this inquiry are

(1) the regulation's "economic impact" on the property owner, (2)

the extent to which the regulation interferes with "distinct

investment-backed expectations," and (3) the "character" of the

interference, that is, whether the governmental action is more

akin to a physical invasion or to a necessary readjustment of

economic benefits and burdens. Penn Cent. Transp. Co. v. New

York City, 438 U.S. 104, 124 (1978); accord Connolly, 475 U.S. at

225; Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1005 (1984).

This trichotomous test compels the conclusion that the alleged

infringement here in no way constitutes a compensable taking.

We first assess the severity of the economic impact.

The hallmark of an unconstitutional taking is, of course, the

denial of the "economically viable use of [an owner's] land."

Agins v. City of Tiburon, 447 U.S. 255, 260 (1980). Thus, an

infringement that leaves virtually the whole of the owner's

possessory rights intact does not constitute a taking. See,

e.g., Penn Cent., 438 U.S. at 130-31; Gilbert v. City of

Cambridge, 932 F.2d 51, 56 (1st Cir.) (rejecting takings argument

where the regulation in question "preserve[d] an economically

viable property use to landlords"), cert. denied, 112 S. Ct. 192

(1991). Put another way, "where an owner possesses a full

`bundle' of property rights, the destruction of one `strand' of

the bundle is not a taking, because the aggregate must be viewed

in its entirety." Andrus v. Allard, 444 U.S. 51, 65-66 (1979).

11

The economic regulation involved here deprives

appellant only of his right to terminate the lease upon the

FDIC's appointment as receiver. He still enjoys all other

common-law rights particular to lessors; all other provisions in

the lease, including those that allow appellant to terminate the

lease for, say, breach of the agreement to pay rent in a timely

fashion or breach of the covenant to maintain the premises in

good order, remain in full force. FIRREA's application, then,

can hardly be said to deprive appellant of anything remotely

resembling his entire bundle of rights.

What is more, the present tenant, as FDIC's assignee,

is not a free rider. It must use the premises only for the

purposes permitted in the lease, abide by the lease's covenants,

and pay the rent and other emoluments stipulated in the lease.

Thus, the only economic harm that befalls appellant from a

frustration of the ipso facto clause is whatever anticipatory

harm may stem from his lost opportunity to re-rent the Hyannis

property at a potentially more lucrative rate. Such a "loss"

does not weigh heavily in the constitutional balance. See id. at

66 (observing that "the interest in anticipated gains has

traditionally been viewed as less compelling than other property-

related interests"). In the circumstances of this case,

extinguishing appellant's preexisting right to terminate the

lease upon the bank tenant's failure creates only a minimal

impairment of appellant's overall rights in the Hyannis property.

The second significant factor in determining whether a

12

regulation constitutes a Fifth Amendment taking implicates the

extent of the interference with investment-backed expectations.

The inquiry into this factor further undermines appellant's

position.

Although prudent landlords pepper leases with a myriad

of provisions designed to guard against worst-case contingencies,

landlords nevertheless lease property in the expectation that

they will receive the agreed-upon rent, not in the hope that

adverse contingencies will materialize and bring contractual

safeguards into play. Moreover, considering the pervasive

regulation that has long characterized the banking industry, see,

e.g., Fahey v. Mallonee, 332 U.S. 245, 250 (1947) ("Banking is

one of the longest regulated and most closely supervised of

public callings."), no reasonable landlord would anticipate that

every provision in a long-term bank lease will remain unaffected

by subsequent changes in federal law. Those who deal with firms

in regulated industries must expect that their dealings will from

time to time be affected by statutory and regulatory changes.

See Connolly, 475 U.S. at 227.

Given that the reasonable expectation to which a

landlord is entitled is an uninterrupted stream of rent at the

contract rate, not the future exercise of a termination-upon-

insolvency clause, FIRREA cannot be viewed as interfering with a

vested property interest, the usurpation of which would require

compensation. See Penn Cent., 438 U.S. at 124-25 (observing that

13

government actions, even those which "cause[] economic harm,"

cannot be considered takings when they do not "interfere with

interests that [are] sufficiently bound up with the reasonable

expectations of the claimant to constitute `property' for Fifth

Amendment purposes"). In the last analysis, FIRREA leaves

appellant firmly in possession of the essence of that for which

he bargained: a fixed rent for a fixed period.

Turning to the third factor, we do not think that the

governmental action here at issue resembles a physical invasion.

The government, through FIRREA, is not appropriating appellant's

property for its own use. Rather, it is altering the future

operation of landlords' and tenants' preexisting contractual

rights in order to stem the disruption of banking services within

communities, lessen the costs of bank liquidation, and restore

public confidence in the nation's banking system. In short,

FIRREA's role here is to reallocate economic pluses and minuses

in what we find to be an apt illustration of the aphorism that

"Congress routinely creates burdens for some that directly

benefit others." Connolly, 475 U.S. at 223. There is nothing

wrong per se with such expressions of legislative will or with

the readjustments that they produce.

In a nutshell, the character of the governmental action

strongly favors the appellees' position. The mere fact that

future obeisance to the newly enacted law might cause a property

owner, as in this case, to forgo an opportunity for gain is no

more than a necessary consequence of FIRREA's regulatory regime.

14

Hence, if there is an invasion of a property right at all, it is

a tiny invasion of a lambent right, arising "from a public

program that adjusts the benefits and burdens of economic life to

promote the common good," id. at 225, and, as such, does not

constitute a taking. See id.; accord Andrus, 444 U.S. at 65;

Penn Cent., 438 U.S. at 124; Usery v. Turner Elkhorn Mining Co.,

428 U.S. 1, 15-16 (1976); Pennsylvania Coal Co. v. Mahon, 260

U.S. 393, 413 (1922).

We need go no further. Here, the three integers

composing the applicable equation unanimously suggest rejection

of appellant's Takings Clause argument. We heed that counsel.

IV. CONCLUSION

To recapitulate, applying section 1821(e)(12)(A) to

trump the ipso facto clause in the Hyannis lease is a prospective

application of FIRREA and, thus, lawful. Furthermore, the

resulting impairment of the landlord's right to terminate the

lease upon the tenant bank's failure does not infract the Takings

Clause. The judgment of the district court must, therefore, be

Affirmed.

15