MORGAN GUARANTY TRUST COMPA-
NY OF NEW YORK, Morgan Grenfell
& Co., Limited, the Bank of Tokyo
Limited, the Governor and Company of
the Bank of Scotland and Orion Royal
Bank, Limited, Plaintiffs–Appellees,

v.

REPUBLIC OF PALAU, Defendant–
Appellant.

No. 1191, Docket 91–9224.

United States Court of Appeals,
Second Circuit.

Argued May 26, 1992.

Decided Aug. 5, 1992.

Barry R. Satine, New York City (Robert
Layton, Jones, Day, Reavis & Pogue, Wil-
son, Elser, Moskowitz, Edelman & Dicker,
of counsel), for plaintiffs-appellees.

Kristie Stokes Hassett, New York City
(Wayne A. Cross, Reboul, MacMurray,
Hewitt, Maynard & Kristol, of counsel), for
defendant-appellant.

Before MINER and WALKER, Circuit
Judges, and KELLEHER, District Judge.*

MINER, Circuit Judge:

Defendant-appellant Republic of Palau
appeals from a final judgment of the Unit-
ed States District Court for the Southern
District of New York (Sweet, *J.*) entered on
November 1, 1991.  The final judgment
followed entry by the district court of a
judgment on July 31, 1991, remanding this
case to the Supreme Court of the State of
New York, New York County, for proceed-
ings on the merits.  Palau removed the
case from the New York Supreme Court to
the district court in January 1986, and the
remand was required by our decision in

* Hon. Robert J. Kelleher, United States District
Judge for the Central District of California, sit-
ting by designation.

*Morgan Guaranty Trust Co. of New York v. Republic of Palau,* 924 F.2d 1237 (2d Cir.1991) ("*Palau I*"). The July 31 judgment also provided for recovery by plaintiff-appellee Morgan Guaranty Trust Company of New York and the other plaintiffs-appellees (collectively, "Morgan") of costs and attorneys fees incurred subsequent to November 19, 1988 as a result of Palau's removal of this case.

In determining that Morgan was entitled to these costs and fees, the district court applied 28 U.S.C. § 1447(c), as amended on November 19, 1988, rather than the version of section 1447(c) in effect at the time Palau removed this case in 1986. *See Morgan Guaranty Trust Co. of New York v. Republic of Palau,* 767 F.Supp. 561 (S.D.N.Y.1991). The amount of costs and fees awarded, approximately $136,000, was made final by the November 1, 1991 judgment from which Palau now appeals. Palau contends that because removal of this action occurred prior to the amendment of section 1447(c), the district court wrongly applied the amended statute retroactively to award costs and fees in this case. Palau contends further that even if application of the amended statute were proper, a finding of bad faith on Palau's part in removing the action is required for costs and fees to be awarded. For the reasons that follow, the judgment of the district court is affirmed.

## BACKGROUND

### I. The Morgan–Palau Litigation

The background of this litigation is set forth fully in our *Palau I* opinion and in the district court's opinion, and is recounted only as pertinent here. In 1983, Palau, a Trust Territory of the United States located in the Southwest Pacific Ocean, entered into an agreement for the construction of a power plant and fuel storage facility by International Power Systems Company Ltd. of London. Morgan participated in the transaction as the guarantor of loans made by the primary lenders who financed the construction for Palau. Palau defaulted on the debt in March 1985 and Morgan, as guarantor, was constrained to reimburse the primary lenders. After making an unsuccessful demand on Palau for repayment, Morgan commenced this action in the New York Supreme Court on December 17, 1985 to recover from Palau the sums paid by Morgan to the primary lenders. The action was brought under a Recourse Agreement, which provided that Palau would indemnify the guarantors for costs and liabilities they incurred in connection with the guarantees.

Palau removed the case to the district court on January 21, 1986, asserting federal jurisdiction on the ground that Palau was a "foreign state" as defined in the Foreign Sovereign Immunities Act ("FSIA"), *see* 28 U.S.C. § 1603; *see also* 28 U.S.C. § 1441(d) (jurisdiction conferred upon district courts for civil actions brought in state court against a "foreign state" as defined in the FSIA). Disputing Palau's claimed status as a foreign state under the FSIA, Morgan moved for an order remanding the case to the New York Supreme Court. The district court denied Morgan's motion on July 10, 1986, concluding that while Palau technically was not independent as of that time, Palau was a *de facto* foreign state because its sovereignty was inevitable and imminent. *See Morgan Guaranty Trust Co. of New York v. Republic of Palau,* 639 F.Supp. 706 (S.D.N.Y. 1986).

Crucial to the district court's determination that Palau was a *de facto* foreign state was the finding that the United States and Palau had entered into a Final Compact of Free Association on January 10, 1986, and that the Compact had been ratified by a 72% margin in a Palauan plebiscite on February 21, 1986. *See id.* at 709–16. Indeed, at the time of the district court's ruling, it appeared that the only material steps remaining to Palau's full independence were approval of the Compact by the United States Congress and the United Nations, and both approvals seemed likely. The Congress did formally approve the Compact on November 14, 1986, by Joint Resolution. *See* Approval of the Compact of Free Association with the Government of

Palau, Pub.L. No. 99–658, 1986 U.S.C.C.A.N. (100 Stat.) 3672.

Morgan moved for summary judgment on the merits in December 1986. In opposing summary judgment, Palau asserted that as a foreign state it was immune under the FSIA from the jurisdiction of the district court, see 28 U.S.C. §§ 1604, 1605 (foreign state under certain circumstances "immune from the jurisdiction of the courts of the United States and of the States"). Palau also contended that there were triable issues as to the fraudulent inducement and other affirmative defenses it had interposed. The district court agreed with this contention and, on April 3, 1987, denied Morgan's summary judgment motion. However, the district court also held that while Palau had the right to claim immunity as a foreign state, the immunity had been waived. See Morgan Guaranty Trust Co. of New York v. Republic of Palau, 657 F.Supp. 1475 (S.D.N.Y.1987); see also 28 U.S.C. § 1605(a)(1) (foreign state may waive section 1604 immunity).

Palau then moved under Fed.R.Civ.P. 12(b)(1) and 12(b)(6) to dismiss Morgan's claim, contending that it had not waived its immunity and that the terms of the intervening Joint Resolution of Congress, approving the Compact, specifically immunized Palau from the jurisdiction of the district court. The district court rejected these arguments and denied Palau's motion on January 29, 1988. See Morgan Guaranty Trust Co. of New York v. Republic of Palau, 680 F.Supp. 99 (S.D.N.Y.1988).

After a bench trial on the merits, the district court ruled again that Palau had waived immunity, determined that Morgan had established a prima facie case against Palau under the Recourse Agreement, and rejected Palau's fraudulent inducement and other defenses. See Morgan Guaranty Trust Co. of New York v. Republic of Palau, 693 F.Supp. 1479 (S.D.N.Y.1988). Accordingly, judgment for Morgan, in the amount of approximately $46 million, was entered on August 12, 1988. Palau moved to stay enforcement of the judgment pending disposition of Palau's additional motion to reconsider the judgment, see Fed.

R.Civ.P. 59(e) and 62(b), arguing again that it had not waived immunity and that its fraudulent inducement and other defenses were valid. On December 9, 1988, the district court rejected all of Palau's arguments and refused to alter the August 12 judgment. See Morgan Guaranty Trust Co. of New York v. Republic of Palau, 702 F.Supp. 60 (S.D.N.Y.1988).

Palau then appealed to this Court. The original briefs submitted by the parties dealt exclusively with the waiver of immunity issue and with the fraudulent inducement and other defenses. At oral argument on August 15, 1990, we questioned, sua sponte, whether there was federal jurisdiction in the first instance, i.e., whether Palau was a foreign state under the FSIA. Supplemental briefing on that issue was directed.

In their supplemental submissions, the parties essentially reversed their 1986 positions on whether Palau was a foreign state subject to federal jurisdiction as to certain matters. Morgan argued that Palau was a foreign state, and that the federal courts accordingly retained jurisdiction over the case. By contrast, Palau conceded that a crucial assumption behind the district court's July 10, 1986 determination that Palau was a de facto foreign state—proper ratification of the Compact in the February 1986 Palauan plebiscite—had "proved to be erroneous." We were informed that, not long after the Compact was approved by the United States Congress in November 1986, the Supreme Court of Palau ruled that under the Palauan Constitution the Compact had to be ratified by a 75% margin. This ruling effectively nullified the February 1986 plebiscite, which had ratified the Compact only by a 72% margin. We also learned that four plebiscites had been held after the February 1986 plebiscite—in December 1986, June 1987, August 1987, and February 1990—and that a 75% majority had never been attained. In short, Palauan independence was no longer imminent or inevitable, although Palau maintained that it would gain independence someday.

In light of the facts and circumstances revealed in the supplemental submissions, we vacated the district court's judgment on February 4, 1991. We held that Palau was not a foreign state for purposes of the FSIA, that there was no jurisdiction over Palau in the federal courts, and that remand of the case to the New York Supreme Court was required. *See Palau I,* 924 F.2d at 1247.[1]

## II. The Instant Dispute

Shortly after our decision in *Palau I,* Morgan moved in the district court, under 28 U.S.C. § 1447(c) as amended on November 19, 1988, for costs and attorneys fees incurred as a result of Palau's removal of the case. The new statute, amended after Palau had lost the bench trial and during the pendency of the district court's reconsideration of the judgment, provides in pertinent part:

> If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.

28 U.S.C. § 1447(c) (1988) (enacted as part of the Judicial Improvements and Access to Justice Act, which amended several of the statutes relating to removal). The original section 1447(c), in effect at the time Palau removed this case to the district court in January 1986, provided in pertinent part:

> If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case, and may order the payment of just costs.

28 U.S.C. § 1447(c) (superseded).

Although it applied the amended statute in evaluating Morgan's motion, the district court opined that "[i]n this particular situation, which it can be assumed is quite unique, § 1447(c) [as amended] will not be applied retroactively." *Morgan Guaranty,* 767 F.Supp. at 563. The district court concluded that a test of "overall fairness" under the circumstances applied in view of the way the statute had been amended, *see id.,* referring to the comment of Professor David D. Siegel that "[i]f any difficulty arises about applying [section 1447(c) as amended] in pending cases, the court should deem itself empowered to make whatever determination about retroactivity seems fair and equitable." Commentaries of Professor David D. Siegel, *reprinted in* 28 U.S.C.A. § 1441, 1992 Pocket Part, at 8.

Accordingly, the district court held that Morgan should recover "just costs and actual attorneys' fees [ ] attributable to the resolution of the sovereign immunity issue subsequent to November 19, 1988," the date the statute was amended. *Morgan Guaranty,* 767 F.Supp. at 564. A judgment incorporating this language, and remanding the case to the New York Supreme Court, was entered on July 31, 1991. In concluding that the award was fair and equitable under the circumstances, the district court noted that Palau had a "change of position" on appeal, and that it was "Palau that was responsible ultimately, with some assistance from the court, for nullification of the proceedings which has resulted after its initial removal of this action." *Id.*

On August 19, 1991, Morgan submitted a Bill of Costs for about $136,000. The amounts claimed in the Bill of Costs included costs and attorneys fees relating to the foreign state and jurisdictional issues addressed in the supplemental briefings on appeal. After a hearing, the district court on November 1, 1991 directed the entry of the Bill of Costs submitted by Morgan. This appeal followed.

---

1. According to the dissent, "events subsequent to removal and beyond the control of the Palau government defeated jurisdiction." At 925–26. However, we held in *Palau I* that "there *was no basis for the exercise of removal jurisdiction* in this case and that the district court *therefore erred in denying [Morgan's] motion to remand the action* to the New York Supreme Court."

*Palau I,* 924 F.2d at 1238 (emphasis added). Of course, our holding in *Palau I* was based in part on the revelation that assumptions behind the district court's finding of *de facto* sovereignty were "erroneous in light of subsequent events," *id.* at 1244. The fact remains that the district court's assumptions were erroneous *ab initio.*

## DISCUSSION

### I. Retroactive Application of Section 1447(c)

Palau argues that the district court, despite its disclaimer of retroactive application, in fact applied amended section 1447(c) retroactively, and that retroactive application of the statute is improper. Palau's claim of retroactive application is grounded on the fact that removal of this case to the district court occurred prior to the amendment of section 1447(c) in 1988. According to Palau, "[t]he act of removal, which took place in 1986, is the *only* basis for an award of costs and attorneys' fees under [the amended] Section 1447(c)" (emphasis added).

The Supreme Court's current position on retroactive application of civil statutes is, as the Court itself has acknowledged, somewhat unclear. *Compare Bradley v. School Board of City of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974) (notwithstanding retroactive effect, "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary") *with Bowen v. Georgetown University Hospital,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988) ("[C]ongressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."); *see also Kaiser Aluminum and Chemical Co. v. Bonjorno,* 494 U.S. 827, 837–40, 110 S.Ct. 1570, 1577–79, 108 L.Ed.2d 842 (1990) (acknowledging "apparent tension" between *Bradley* and *Bowen* rules, but not resolving the conflict because plain language of statute at issue made clear it was not to be applied retroactively). In any event, the questions of whether and under what circumstances section 1447(c) as amended may be applied retroactively need not be reached in this case, because we do not believe that the statute was applied with retroactive effect by the district court. Accordingly, we must reject Palau's contention here.

Although a statute creating a new obligation on the basis of considerations rooted in the past generally is said to operate retroactively, *see Cox v. Hart,* 260 U.S. 427, 435, 43 S.Ct. 154, 157, 67 L.Ed. 332 (1922); *Black's Law Dictionary* 1184 (Special Deluxe 5th ed. 1979), it is well-settled that "[a] statute is not rendered retroactive merely because the facts or requisites upon which its subsequent action depends, or some of them, are drawn from a time antecedent to the enactment." *Reynolds v. United States,* 292 U.S. 443, 449, 54 S.Ct. 800, 803, 78 L.Ed. 1353 (1934) (citing *Cox,* 260 U.S. at 435, 43 S.Ct. at 157); *see also Burke Mountain Academy, Inc. v. United States,* 715 F.2d 779, 782 (2d Cir.1983) (also citing *Cox*). Upon examination of the plain language of section 1447(c) as amended, it is evident that the act of removal is merely an antecedent fact upon which the amended statute's subsequent action depends, and is not the consideration on which an award of costs and fees is based. The award is a direct function of the remand order, *see* 28 U.S.C. § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorneys fees, incurred as a result of the removal."), and the necessity to remand in turn arises at the moment *"it appears"* subject matter jurisdiction is lacking, *see id.* (emphasis added). Therefore, the operation of section 1447(c) as amended depends on the "appear[ance]" of the absence of jurisdiction, and not, as Palau contends, on the act of removal. Subject to these constraints, the statute seems intended to apply to cases pending at the time of the amendment. It was only after, and not before, section 1447(c) was amended in November 1988 that it "appear[ed]" that federal jurisdiction was lacking. This temporal relationship among the relevant events in this case is inconsistent with the claim that the statute was applied retroactively by the district court.

Moreover, impairment of a "vested right" acquired under prior law—another telltale characteristic of retroactive effect, *see Cox,* 260 U.S. at 435, 43 S.Ct. at 157; *Black's Law Dictionary* 1184 (Special Deluxe 5th ed. 1979)—is also absent in this

case. It may have been true that costs, and particularly attorneys fees, could not be awarded under the old statute in the absence of a bad faith removal or some similar type of unusual circumstance, although we note that the case law is less than entirely clear and uniform on this point. We also accept the district court's apparent determination that the removal of this case was not improvident or in bad faith when undertaken, *see Morgan Guaranty*, 767 F.Supp. at 563. However, these factors do not lead to the conclusion that a legitimately settled expectation not to have costs or fees taxed was disrupted by application of the amended statute in this case. The award of costs and fees by the district court related only to the period after section 1447(c) was amended, and, as we have explained, the statute conditions the award entirely on an event—the "appear[ance]" that federal jurisdiction was lacking—occurring, in this case, after amendment of the statute. "No person has a vested interest in any rule of law, entitling him to insist that it shall remain unchanged for his benefit." *New York Central R.R. Co. v. White*, 243 U.S. 188, 198, 37 S.Ct. 247, 250, 61 L.Ed. 667 (1917).

Uncontroversial aspects of the Supreme Court's *Bradley* decision, together with the Court's discussion in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), provide strong inferential support for our belief that section 1447(c) was not applied retroactively by the district court. In *Bradley*, a district court had awarded attorneys fees to a prevailing party in a civil rights case for services rendered from March 10, 1970 to January 29, 1971. At the time of the award, made on May 26, 1971, no statute authorized the taxing of fees, and the district court drew on its inherent power, recognized by the Supreme Court, to award fees in unusual circumstances. *See Bradley*, 416 U.S. at 705–07 & n. 8, 94 S.Ct. at 2013–14 & n. 8. A statute authorizing attorneys fees in civil rights cases then became effective on July 1, 1972, during the pendency of the appeal of the fee award. The Court clearly indicated that a retroactivity issue arose only because, and to

the extent that, fees had been awarded for services rendered prior to the effective date of the statute. *See Bradley*, 416 U.S. at 710, 94 S.Ct. at 2015–16; *see also Northcross v. Board of Education*, 412 U.S. 427, 429 n. 2, 93 S.Ct. 2201, 2202 n. 2, 37 L.Ed.2d 48 (1973) (per curiam) (reserving question, subsequently answered in *Bradley*, of whether fees could be awarded under the statute "insofar as those expenses were incurred prior to the date that [the statute] came into effect"). Here, by contrast, costs and fees were awarded only for the period subsequent to amendment of section 1447(c).

In *Cohen*, a state statute passed during the pendency of litigation provided that stockholders not prevailing in suits against their corporations were liable for the corporation's expenses and attorneys fees. In declining to view the statute as retroactive by its terms, the Court noted that the statute did not necessarily impose liability "for expenses incurred by the defense previous to its enactment," but rather could be interpreted to impose liability "only from the time when the Act was passed." *Cohen*, 337 U.S. at 553, 69 S.Ct. at 1228–29. Therefore, according to the Court, the statute did "not extend either to destruction of an existing cause of action or to creation of a new liability for past events." *Id.* at 554, 69 S.Ct. at 1229. At least one court of appeals has taken a comparable view of the circumstances causing a fee statute to operate retroactively. *See Simmons v. Lockhart*, 931 F.2d 1226, 1230–31 (8th Cir.1991) (new statute passed on November 19, 1988, altered method of awarding fees of court-appointed attorneys in death penalty cases; court held that, to avoid retroactive application of new statute, attorney should be paid under old scheme for time spent prior to November 19, and under new statute for time spent thereafter). Similarly, in this case, costs and fees were awarded only for the period subsequent to amendment of the statute.

In *Fowler v. Safeco Ins. Co. of America*, 915 F.2d 616 (11th Cir.1990) (per curiam), and *Bucary v. Rothrock*, 883 F.2d 447 (6th Cir.1989), the Eleventh and Sixth Circuits,

respectively, declined to apply section 1447(c) as amended to awards of costs. Both courts seemed to suggest, without elaboration, that application of the amended statute would have retroactive effect because removal had occurred prior to the time the statute was amended. *See Fowler*, 915 F.2d at 617 & n. 1; *Bucary*, 883 F.2d at 449 & n. 1. To the extent these cases hold that application of section 1447(c) as amended would be retroactive solely because removal occurred prior to the time of the statute's amendment, we decline to follow them. We note, however, the possibility that in both cases the district courts identified the lack of jurisdiction prior to amendment of the statute. *See Fowler*, 915 F.2d at 617; *Bucary*, 883 F.2d at 448–49.

Other decisions, involving other provisions of the various removal statutes amended in November 1988, also have viewed the time of removal as central to determining whether application of the amended statute would have retroactive effect. However, operation of the particular provision at issue in each of these cases, unlike the provision of section 1447(c) at issue here, depended upon the time of removal. *See, e.g., In re Shell Oil Co.*, 932 F.2d 1523, 1526–27 (5th Cir.1991) (amended section 1447(c) provides that motion to remand based on defect in removal procedure must be made within 30 days after removal, whereas original statute provided no time limit; application of amended provision seen as retroactive where removal occurred prior to date of amendment); *Air-Shields, Inc. v. Fullam*, 891 F.2d 63, 64–65 (3d Cir.1989) (same); *Wilson v. General Motors Corp.*, 888 F.2d 779, 780–81 (11th Cir.1989) (amended section 1447(b) provides that case must be removed within one year after initiation of action, whereas original statute provided no time limit; application of amended provision seen as retroactive where removal occurred almost three years before statute amended); *see also Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1527–32 (9th Cir.1989), *cert. denied*, 493 U.S. 1076, 110 S.Ct. 1126, 107 L.Ed.2d 1033 (1990).

## II. Standard for Awarding Costs and Fees Under Section 1447(c)

■ Palau contends that costs and fees cannot be awarded under section 1447(c) as amended unless the removal was undertaken in bad faith. The parties, as well as the district court, seem to be in agreement that Palau did not remove this case in bad faith. As noted previously, there appears to be some lack of clarity in the case law interpreting original section 1447(c) with respect to the circumstances under which costs, and particularly attorneys fees, could be awarded on remand. It is not necessary for us to examine these cases. Whatever argument might have been made for a bad faith removal requirement under the old statute is mooted, in our view, by the amended version of section 1447(c) applicable to costs and attorneys fees.

The amendment did not add the phrase "bad faith" to the statute, but rather deleted the requirement that the case have been "removed improvidently." Indeed, the statute as amended makes no reference at all to the state of mind or intent of the party removing the action, instead focusing strictly on the mere absence of subject matter jurisdiction. The amendment also added to the statute an explicit reference to attorneys fees as part of the costs that may be awarded. We must, at least in the absence of strong and convincing evidence to the contrary, consider such sharply different wording to have been a deliberate choice by Congress. *See Brewster v. Gage*, 280 U.S. 327, 337, 50 S.Ct. 115, 117–18, 74 L.Ed. 457 (1930).

We observe also that other courts have taken specific note of these changes to the statute in concluding that awards of costs and attorneys fees are not to be predicated under the new section 1447(c) on bad faith removal. *See, e.g., Moore v. Kaiser Foundation Hospitals, Inc.*, 765 F.Supp. 1464, 1465–66 (N.D.Cal.1991); *Penrod Drilling Corp. v. Granite State Ins. Co.*, 764 F.Supp. 1146, 1147 (S.D.Tex.1990). Even the cases cited by Palau, while mentioning bad faith as a traditional factor to be considered, tend to highlight that an award under the amended statute is nonetheless

discretionary in the first instance. *See, e.g., IMCO USA, Inc. v. Title Ins. Co. of Minnesota*, 729 F.Supp. 1322, 1324 (M.D.Fla.1990) (award of costs and fees "completely discretionary by the plain meaning of the statutory language"); *Elkhart Cooperative Equity Exchange v. Day*, 716 F.Supp. 1384, 1388–89 (D.Kan. 1989) (award is discretionary, with costs and fees "generally" awarded if there is bad faith).

The district court concluded that section 1447(c) as amended requires application of a test of "overall fairness given the nature of the case, the circumstances of the remand, and the effect on the parties," *Morgan Guaranty*, 767 F.Supp. at 563. The statute as a whole, particularly the reference that an order remanding the case *"may* require payment" of costs and fees, *see* 28 U.S.C. § 1447(c), affords a great deal of discretion and flexibility to the district courts in fashioning awards of costs and fees. Whatever the precise boundaries of a district court's discretion to award costs and fees under the current version of section 1447(c) may be, we are confident that the district court did not abuse its discretion in this case and that the award was fair and equitable under all the circumstances.

As of January 21, 1986—the date Palau removed this case to the district court—no plebiscite on the Compact had yet been held in Palau. While the Compact was approved by a 72% vote shortly thereafter, the factors that eventually clearly established the lack of federal jurisdiction were attributable to Palau, as the district court pointed out. These factors included the ruling of the Palauan Supreme Court re-

quiring 75% approval of the Compact, and the repeated declinations of the Palauan people to ratify the Compact by the margin required by the Palauan Constitution as interpreted by the Palauan Supreme Court.

While we are willing to accept Palau's claim that it informed the district court of the plebiscite results as they were announced from time to time, it remains that Palau did not make the district court fully aware of the substantive meaning of these developments: that Palau's status as a foreign state, and hence federal jurisdiction, never a certainty, was becoming increasingly doubtful with the passage of time.[2] Palau insists, for example, that the district court, as late as its January 1988 opinion on Palau's motion to dismiss under Fed. R.Civ.P. 12(b)(1) and 12(b)(6), was aware that the Compact had not yet been ratified properly. Yet throughout this same time period, Palau continued to proceed with this litigation as if nothing at all had changed and Palau's status as a *de facto* foreign state were unassailable. In short, Palau was content to behave as a sovereign until we forced the issue and called for further briefing. Palau then essentially changed its position and all but expressly admitted it was not a foreign state, on the basis of facts of which Palau had been aware for some time.

It is true that Morgan changed its position as well, perhaps even more sharply than did Palau. However, it must also be recalled that Palau, and not Morgan, removed this case in the first instance.[3] Lastly, as previously mentioned, the district court carefully limited the impact of the award on Palau by awarding only costs

---

**2.** The dissent seeks to excuse Palau's failure to inform the district court of the jurisdictional problem by interpreting that failure to mean that it "never occurred" to Palau that jurisdiction was lacking. But it must have occurred to Palau that there was at least a potential problem with jurisdiction, or else it would not have even bothered to inform the district court of the disappointing plebiscite results from time to time.

**3.** The dissent maintains that the statute is designed to compensate plaintiffs only for the costs of opposing removal, and correctly notes that on appeal in *Palau I*, Morgan took the

position that federal jurisdiction was proper. It may be that, in practice, the statute ordinarily will operate to compensate plaintiffs who oppose removal. However, the statute as amended requires only that the costs and fees have been incurred "as a result of the removal," and does not make any specific mention of which party is to be compensated. The quoted language reinforces our belief that the new version of section 1447(c) affords the district courts a good deal of flexibility in dealing with unusual circumstances such as those presented in this case.

and fees incurred subsequent to the date section 1447(c) was amended.

We have considered carefully Palau's remaining arguments, and find them to be without merit.

## CONCLUSION

The judgment of the district court is affirmed.

JOHN M. WALKER, Jr., Circuit Judge, dissenting:

The majority holds that the district court did not apply § 1447(c) retroactively and properly awarded $136,000 in attorney's fees. While I am not wholly convinced by the majority's retroactivity analysis, my principal disagreement is with the majority's conclusion that the fee award did not constitute an abuse of discretion. Because Palau has consistently acted in good faith, because Palau's supposed change of position came about only at the request of this court, and because the district court's award of fees is unprecedented both in size and context, I think the district court abused its discretion. Accordingly, I respectfully dissent.

I agree with the majority that fees may be awarded even absent bad faith. I do not agree that "the award was fair and equitable under the circumstances." The panel identifies three reasons why the fee award was appropriate: (1) "the factors that eventually clearly established the lack of federal jurisdiction were attributable to Palau", *supra* at 924; (2) "Palau did not make the district court fully aware of the substantive meaning" of the Palau Supreme Court decision and the subsequent plebiscites, *id.;* and (3) Palau "essentially changed its position and all but expressly admitted it was not a foreign state", *supra* at 924. None of these claims survives serious scrutiny.

First, to suggest that "the factors that eventually clearly established the lack of federal jurisdiction were attributable to Palau" is to confuse the government of Palau with the people of Palau (who voted in the plebiscites) and the Supreme Court of Palau (who invalidated an early plebiscite).

Only the government of Palau is a party in this case. Presumably, the government of Palau supported the sovereignty plebiscites and opposed the Palau court's decision. That the people and the court took actions that ultimately thwarted the jurisdictional claim cannot be attributed to the government of Palau and thus are irrelevant to assessing Palau's conduct in this litigation.

The panel also notes that although Palau informed the district court of intervening events, Palau did not explain to the district court that these events undermined the court's jurisdiction. To my mind, this is to Palau's credit. Palau faced a 46 million dollar judgment in the district court. Had it occurred to Palau at any time between the entry of judgment in August of 1988 and the moment we inquired into the sovereignty issue at oral argument in August of 1990 that it was not a *de facto* sovereign and thus that the award was void because the court lacked jurisdiction, it is inconceivable that Palau would have paused for a second before bringing the issue to the district court's attention. The only inference that can be drawn from Palau's silence for nearly two years is that it never occurred to Palau that jurisdiction was still an issue. The inference of concealment that the majority draws is implausible.

Finally, the panel observes that Palau "essentially" changed its position by "all but expressly" admitting that it was not a foreign state. Palau simply responded to a request of this court and made an honest factual report of post-removal circumstances that cast doubt on the district court's jurisdiction. Palau had no choice but to report these facts truthfully. Had Palau done otherwise, Rule 11 sanctions would have been appropriate.

In short, the majority has not pointed to a single act by Palau that would warrant awarding fees. Instead, we have here a $136,000 fee award predicated solely on the fact that events subsequent to removal and beyond the control of the Palau government defeated jurisdiction. The majority responds that jurisdiction was lacking from the start. While I give due deference to

the author of the majority opinion's analysis of his prior opinion in *Palau I*, it seems to me that events subsequent to removal were critical to the decision in *Palau I*. *See Palau I*, 924 F.2d at 1246–47. I think this fee award under these circumstances constituted an abuse of discretion.

First, section 1447(c) is principally designed to compensate plaintiffs for the costs of opposing removal in the district court. Here, however, the district court allowed the plaintiffs to recover for fees associated with *defending* the removal in the court of appeals. This is a rather strange use of section 1447(c).

Second, the award here is unprecedented both in size and circumstance. The majority has not identified a single case where attorney's fees (or even costs, under the old rule) were awarded where the district court approved the removal and the court of appeals subsequently disagreed.

Third, awarding fees where the initial removal is proper opens the door for far greater fee shifting than occurs in the normal removal case. In the normal removal case, the defendant merely has to pay the plaintiff's costs in filing the motion that leads to remand. Where remand comes only after a trial and full appeal, the statute appears to open the defendant to liability for all of plaintiff's fees. While Congress may have intended that result where the removal was improper, I do not believe that Congress intended to turn removal into a game of chance, where factual developments subsequent to removal could suddenly expose one party to liability for the full litigation costs of the other. Accordingly, I would find that the district court abused its discretion in awarding plaintiffs $136,000 in fees.

I respectfully dissent.