**FRONTIER INSURANCE COMPANY and NAC Reinsurance Corporation, Plaintiffs,**

v.

**MTN OWNER TRUST and Norwest Bank Minnesota National Association, as Trustee, Defendants.**

**No. 00 Civ. 4260 (WCC).**

United States District Court, S.D. New York.

Aug. 30, 2000.

Beldock Levine & Hoffman LLP, New York City (Brian E. Maas, Ronald C. Minkoff, Julie F. Kowitz, of counsel), for plaintiffs.

Levi Lubarsky & Feigenbaum LLP, New York City (Howard B. Levi, of counsel), for defendants.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiffs, Frontier Insurance Company and NAC Reinsurance Corporation, commenced this fraud action against defendants, MTN Owner Trust and Norwest Bank Minnesota National Association ("Norwest"), by filing of a Summons with Notice in New York State Supreme Court, Sullivan County, on April 28, 2000. By Notice of Removal dated June 7, 2000, defendants removed this action under 28 U.S.C. § 1441(a), contending that this Court has original jurisdiction based upon diversity of citizenship. Presently before this Court is plaintiffs' motion to remand the case to the Supreme Court, Sullivan County. For the reasons stated below, plaintiffs' motion to remand is granted.

## BACKGROUND

Plaintiffs allege, and defendants do not dispute, that plaintiffs are citizens of New York and that plaintiff NAC Reinsurance Corporation is a citizen of Connecticut, where it has a principal place of business. Plaintiffs assert that defendant Norwest is a citizen of New York and Connecticut, so that complete diversity does not exist and the case must be remanded for lack of federal jurisdiction.

Norwest is a national banking association ("NBA") with its principal place of business in Minneapolis, Minnesota. (Luger Decl. ¶ 2.) Norwest provides retail and commercial banking services. (*Id.*) Norwest is a subsidiary of Wells Fargo & Company, a Delaware corporation which has its principal place of business in California. (*Id.* at ¶ 4.) Effective July 8, 2000, Norwest changed its name to Wells Fargo Bank Minnesota National Association. (*Id.* at ¶ 1 n. 1.) However, for the purposes of this motion, we will continue to refer to this defendant as Norwest.

As of July 8, 2000, Norwest had 153 branch banks located in Minnesota, and no branches in New York or Connecticut. (*Id.* at ¶ 3.) As of that same date, Norwest employed 6,547 people, with 6,064 of the employees located in Minnesota. (*Id.* at ¶ 4.) Norwest has six employees located in New York City, five of whom work in its commercial mortgage-backed securities business. (*Id.* at ¶ 6.) Norwest has two employees in Connecticut in connection with its high-yield debt securities business. (*Id.*) Defendant asserts that it does not maintain an office in either New York or Connecticut that is open to the general public. (*Id.*)

Plaintiffs argue that, as a result of Norwest's merger with Wells Fargo & Company, defendants have a substantial presence in New York and Connecticut. Plaintiffs point to the promotional materials announcing the merger, in which the resulting entity is described as "one national franchise." (Maas Decl., Ex. B.) Plaintiffs also put forth a press release in which

Norwest announces the name change of Norwest Mortgage, Inc. to Wells Fargo Home Mortgage, and states that the merged entity has "a presence in more than 1,100 mortgage stores and Norwest/Wells Fargo bank locations serving all 50 states." (*Id.*, Ex. C.) A search for Norwest locations via the Norwest website lists multiple branches in New York and Connecticut. (*Id.*, Ex. D.)

Defendants assert that Norwest and Wells Fargo Home Mortgage, Inc., are separate and distinct legal entities. (Luger Decl. ¶ 5.) Wells Fargo Home Mortgage, Inc., a California corporation with its principal place of business in Des Moines, Iowa, is a wholly-owned subsidiary of Wells Fargo & Company. (*Id.*)

## DISCUSSION

### I. *Standard of Review for Motion to Remand*

■ A cause of action that was originally filed in the state court may be removed by the defendant where "the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). It is axiomatic that, for removal to be considered proper, the removing party must demonstrate that this Court is endowed with the requisite subject matter jurisdiction. *See Caterpillar v. Williams*, 482 U.S. 386, 391–92, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Removal jurisdiction, moreover, is strictly construed inasmuch as it implicates significant federalism concerns and abridges the deference courts generally give to a plaintiff's choice of forum. *See id.; see also In re NASDAQ Market Makers Antitrust Litigation*, 929 F.Supp. 174, 178 (S.D.N.Y.1996) ("Removal jurisdiction must be strictly construed, both because the federal courts are courts of limited jurisdiction and because removal of a case implicates significant federalism concerns"); *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109, 61 S.Ct. 868, 85 L.Ed. 1214 (1941) ("Due regard for the rightful independence of state gov-

ernments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined"); *State of New York v. Lutheran Ctr. for the Aging, Inc.*, 957 F.Supp. 393, 397 (E.D.N.Y.1997) ("Removal statutes are to be strictly construed"). The removing party bears the burden of establishing the propriety of the removal. *See Fisher v. Building Servs.*, 96 Civ. 4317, 1997 WL 590843, *2 (S.D.N.Y. Sept.22, 1997); *Still v. DeBuono*, 927 F.Supp. 125, 129 (S.D.N.Y.1996); *Avon Prods., Inc. v. The A/J Partnership*, 89 Civ. 3743PNL, 89 Civ. 8032PNL, 1990 WL 422416, at *1 (S.D.N.Y. March 1, 1990).

■ While Sections 1441 and 1446 permit removal to the federal courts in certain circumstances, 28 U.S.C. § 1447(c) authorizes a remand on the basis of any defect in removal procedure or because the district court lacks subject matter jurisdiction. *See LaFarge Coppee v. Venezolana De Cementos, S.A.C.A.*, 31 F.3d 70, 72 (2d Cir.1994). "All doubts should be resolved in favor of remand." *Leslie v. BancTec Serv. Corp.*, 928 F.Supp. 341, 347 (S.D.N.Y. 1996) (internal quotations and citations omitted); *see also Boyer v. Snap–On Tools Corp.*, 913 F.2d 108 (3d Cir.1990); *Town of Moreau v. State Dep't of Envtl. Conservation*, No. 96 Civ. 983, 1997 WL 243258, at *1 (N.D.N.Y. May 5, 1997) (*citing Leslie*, 928 F.Supp. at 347).

## II. *Diversity Jurisdiction*

Defendants removed this case on the basis that diversity jurisdiction exists. Title 28, section 1441(b) provides that in actions where diversity of citizenship serves as the jurisdictional basis for removal, "such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). Further, unless complete diversity exists between the parties, this Court lacks original subject matter jurisdiction, and the case was not properly removed. *See* 28 U.S.C. § 1332. Here, it is undisputed that plaintiffs are citizens of New York, and plaintiff NAC Reinsurance Corporation is a citizen of Connecticut. Therefore, if either of the defendants is found to be a citizen of New York or Connecticut, the case must be remanded for lack of subject matter jurisdiction.

### A. *National Banking Associations*

■ Defendant Norwest is a national banking association. (Luger Decl. ¶ 2.) Under 28 U.S.C. § 1348, "[a]ll national banking associations are deemed citizens of the states in which they are respectively located." 28 U.S.C. § 1348.

The leading case on the issue of the meaning of "located" in section 1348 is *Connecticut Nat'l Bank v. Iacono*, 785 F.Supp. 30 (D.R.I.1992). In *Iacono*, the court, relying on *Citizens and Southern Nat'l Bank v. Bougas*, 434 U.S. 35, 98 S.Ct. 88, 54 L.Ed.2d 218 (1977), held that under section 1348, a national banking association is located in, and therefore a citizen of, every state in which it maintained branch banks. *Iacono*, 785 F.Supp. at 33–34. Since the *Iacono* decision, numerous district courts have interpreted section 1348 to mean that a national banking association is located in every state in which it maintains a branch bank. *See, e.g., Rodriguez v. Rodriguez*, No. 98 Civ. 3316, 1999 WL 92600, *1, 1999 U.S.Dist. LEXIS 1698, at *3 (S.D.N.Y. Feb. 22, 1999); *Schmidt v. Fleet Bank*, 16 F.Supp.2d 340, 354 (S.D.N.Y.1998); *Bank of New York v. Bank of Am.*, 861 F.Supp. 225, 231 (S.D.N.Y.1994); *Moore v. Union Planters Corp.*, No. 99 Civ. 225–D–B, 2000 U.S.Dist. LEXIS 1063, at *6 (N.D.Miss. Jan. 18, 2000); *Ferraiolo Constr. v. Keybank N.A.*, 978 F.Supp. 23, 24 (D.Maine 1997); *Silver v. Bank Midwest N.A.*, No. 95 Civ. 2579, 1996 WL 328737 *2, 1996 U.S.Dist. LEXIS 8391, at *5–6 (D.Kan. May 15, 1996); *Norwest Bank Minnesota N.A. v. Patton*, 924 F.Supp. 114, 115 (D.Colo.1996); *McHugh v. Westpac Bank-*

*ing Corp.*, Nos. 93 Civ. 3058, 93 Civ. 3059, 1995 WL 243339, at *1 (N.D.Ill. April 24, 1995). This is consistent with the "modern trend of construing the diversity jurisdiction narrowly so as to relieve the congestion of federal courts." *Bank of New York*, 861 F.Supp. at 230. Section 1348, as first adopted in 1882, was intended to limit national banking associations' access to federal courts. *See Herrmann v. Edwards*, 238 U.S. 107, 35 S.Ct. 839, 59 L.Ed. 1224 (1915), *cited in Bank of New York*, 861 F.Supp. at 230.

In *Bank of New York*, the court went further to hold that "located" "includes any place where a [national banking association] maintains a substantial presence." 861 F.Supp. at 231; *see also Norwest Bank Minnesota*, 924 F.Supp. at 115 (citing *Bank of New York* with approval); *McHugh*, 1995 WL 243339, at *1 (same). In *Bank of New York*, the national banking association did not maintain a branch bank in New York, but did maintain offices in New York in an office tower bearing its own name. *Id.* In finding that the national banking association's presence was sufficiently significant for it to be "located" in New York, the court noted that it could "perceive no distinction between branches and offices relevant to determining the citizenship of an NBA under § 1348." *Id.*

Norwest argues that in *Financial Software Systems, Inc. v. First Union National Bank*, 84 F.Supp.2d 594, 602–07 (E.D.Pa.1999), the court articulated a better meaning of "located" in section 1348. In *Financial Software*, the court concluded, after an examination of "the history and purpose of the legislation," that for the purposes of diversity jurisdiction, a national banking association is only a citizen of the state in which it has its principal place of business. *Id.* at 602. However, the decisions of district courts in the Second Circuit are more persuasive to this Court. We will not depart from the majority view, that a national banking association is located where it has a "substantial presence" or

branch banks, on the basis of a single case in another circuit.

■ Norwest does not maintain any of its own branch banks in New York or Connecticut. Therefore we must decide whether it has a substantial presence in New York or Connecticut. As stated above, Norwest maintains an office in New York with six employees, five of whom work in its commercial mortgage-backed securities business. (Luger Decl. ¶ 6.) Norwest also maintains an office in Connecticut with two employees that work in its high-yield debt securities business. (*Id.*) Although these small offices differ significantly from the office building full of employees in *Bank of New York*, Norwest is in business in New York and Connecticut. As the court in *Bank of New York* noted, there is little reason to distinguish an office from a branch bank on the basis of the number of employees working there. 861 F.Supp. at 231. In repeatedly holding that a national banking association is "located" where it maintains a branch bank, no court has inquired as to the size of the branch bank offices, as to the number of branch employees, or as to the volume of business transacted at the branch. Thus, we see no need to do so here.

Further, since the merger of Norwest with Wells Fargo & Company in 1998, Norwest has held itself out as one large, extensive and diversified financial services company. (Maas Decl., Exs. B & C) (pages from Norwest's website, www.norwest.com/ information-mergernews/message/ doc/index.htm; and Wells Fargo's website www. wellsfargo.com/ press/ press000417.) Norwest also states in a press release announcing the name change of Norwest Mortgage, Inc. to Wells Fargo Home Mortgage that the merged entity has "a presence in more than 1,100 mortgage stores and Norwest/Wells Fargo bank locations serving all 50 states." (*Id.*, Ex. C.) Plaintiffs also put forth a search on the Norwest website's Location Guide, which lists multiple branches of Wells Fargo Home Mortgage, Inc. in New York and

 

Connecticut. (*Id.*, Ex. D.) Norwest asserts that Wells Fargo Home Mortgage and Norwest are "separate and distinct legal entities." However, on the Norwest website Norwest appears to be claiming that Wells Fargo Home Mortgage offices are its own, thus contributing to Norwest's presence in New York and Connecticut.

Mindful that "all doubts should be resolved in favor of remand," *Leslie*, 928 F.Supp. at 347, we conclude that, for the purposes of section 1348, Norwest is located in New York and Connecticut. Therefore, removal was improper and the action must be remanded.

### III. *Costs and Fees*

 Plaintiffs also seek costs and attorney fees under section 1447(c), which reads in relevant part: "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The award of costs and attorney fees is at the discretion of this Court. *Morgan Guaranty Trust Co. of New York v. Republic of Palau*, 971 F.2d 917, 923–24 (2d Cir.1992). Further, bad faith removal, although often considered, is not required in order to award costs and attorney fees. *See id.* We must apply a test of "overall fairness given the nature of the case, the circumstances of the remand, and the effect on the parties." *Id.* at 924.

Although plaintiffs argue that Norwest "had no legitimate basis for removing this case to federal court," (Pls.Mem. at 7), plaintiffs put forth no evidence from which this Court could infer that the removal was in bad faith. Further, Norwest did have at least a colorable basis for removal, because under *Financial Software*, its principal place of business is not in New York or Connecticut. 84 F.Supp.2d at 606–07. Thus, Norwest's removal was neither frivolous nor plainly unreasonable. *See Agapov v. Negodaeva*, 93 F.Supp.2d 481, 484 (S.D.N.Y.2000).

Therefore, plaintiffs' motion for attorney fees and costs is denied.

### CONCLUSION

For the reasons set forth above, plaintiffs' motion to remand is granted, and plaintiffs' motion for attorney fees and costs is denied. The Clerk shall remand this action to the Supreme Court, Sullivan County.

SO ORDERED.